UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATTLE MIDEAST AWARENESS CAMPAIGN, a Washington non-profit corporation,

Plaintiff,

v.

KING COUNTY, a municipal corporation,

Defendant.

NO. 11-cv-00094

MOTION FOR PRELIMINARY INJUNCTION OF PLAINTIFF SEATTLE MIDEAST AWARENESS CAMPAIGN

**NOTED FOR HEARING: FEBRUARY 4, 2011**

**RELIEF REQUESTED**

Plaintiff Seattle Mideast Awareness Campaign ("SeaMAC") respectfully requests that this Court issue a preliminary injunction, pursuant to Fed. R. Civ. P. 65, and direct Defendant King County to publish SeaMAC's ad, which is protected by the First Amendment, within 24 hours of the date of this Court's Order on this Motion.

This immediate, injunctive relief is appropriate because (1) SeaMAC is likely to succeed on the merits of its claims, (2) it will likely suffer irreparable harm in the absence of this injunctive relief, (3) the balance of equities tips in its favor, and (4) issuance of injunctive relief is in the public interest.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

## STATEMENT OF FACTS

***Introduction***

This is an action for injunctive and declaratory relief, filed by SeaMAC, as a consequence of Defendant King County's violation of SeaMAC's constitutional right of free speech.

On December 23, 2010, in violation of SeaMAC's constitutional right of free speech and contrary to its own Advertising Policy and Contract for Advertising, Defendant King County unilaterally, and unlawfully, decided to not publish an ad submitted by SeaMAC for publication on Defendant King County's buses.

***Defendant King County Approved SeaMAC's Ad for Publication on Its Buses***

In October 2010, SeaMAC contacted Defendant King County's agent, Titan Outdoor LLC, or titan360.com ("Titan"), for the purpose of placing an ad on the outside of selected buses. The ad contained pictures of children looking at a demolished building and contained the caption "Israel War Crimes – Your tax dollars at work."[1] The ad was intended to mark the two year anniversary of the Israeli bombing campaign, in Gaza, which occurred in December 2008 and January 2009.

Although not necessary, it is worth noting that the SeaMAC ad is evidence-based, as it is based on conclusions which have been reached by other, independent agencies and fact finding missions. For example, "War Crime" is a legal term, meaning a grave violation of the Geneva Conventions (*see e.g.*, 18 U.S.C. § 2441), and characterization of Israeli military conduct against Palestinians "war crimes" has been widely documented for years. The Report of the United Nations Fact Finding Mission on the Gaza Conflict, following its extensive investigation, concluded Israeli military forces committed war crimes and breaches of humanitarian law. Amnesty International found evidence of Israeli soldiers using Palestinian

[1] The evidentiary basis for much of the factual information set forth in this Motion is the Declaration Ed Mast (Mast Decl.), which accompanies this Motion. A copy of the proposed ad is attached to the Mast Decl. and marked as Exhibit A.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

civilians, including children, as human shields— a war crime in violation of the Geneva Convention.

SeaMAC gave Titan and Defendant King County a copy of the ad it intended to publish on the buses on October 15, 2010. The ad was to run from December 27, 2010, through January 19, 2011, inclusive. After it submitted its ad, Defendant King County presented SeaMAC with its Contract for Advertising.

On November 10, 2010, SeaMAC was advised by Titan, on behalf of Defendant King County, that, having reviewed the ad, it had been approved, as submitted, for publication on the buses.

On December 13, 2010, SeaMAC executed Defendant King County's Contract for Advertising.[2] Thereafter, SeaMAC paid the fee charged by Defendant King County. In all other respects, SeaMAC fully performed its obligations as required by Defendant King County in its Contract for Advertising.[3]

SeaMAC's ad was scheduled to begin running on Defendant King County's buses on December 27, 2010, for 30 days, on 12 different buses. The timing of the publication of the ad was important to SeaMAC, as it was intended to coincide with the Israeli bombing, in Gaza, during December 2008 and January 2009.

In a complete about face, Defendant King County decided, on December 23, 2010, that it would not honor its Contract for Advertising or its existing Advertising Policy and not run the ad, as previously approved and agreed. Instead, Defendant King County issued a press release, announcing this change of plans. In addition, Defendant King County announced that its existing Advertising Policy was no longer in effect and that, effective immediately, it was implementing a new, different, and interim Advertising Policy. Later that

---

[2] A copy of the executed Contract for Advertising is attached to the Mast Decl. and marked as Exhibit B.

[3] SeaMAC paid MVP Poster, Inc., the printer for the ad to be placed on the buses, on December 14, 2010.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

same day, a representative from Titan contacted SeaMAC and formally notified it that the ad had been cancelled.

***King County's Policy and Practices Authorize Publication of SeaMAC's Ad***

At least as early as October 2010, Defendant King County had in place a written policy concerning its policies, practices, and procedures for the placement and payment of ads on its public transit buses (the "Advertising Policy"), and this policy was applicable to SeaMAC's ad.[4]

Defendant King County's Advertising Policy required only that an ad not be objectionable under contemporary community standards—or insulting, degrading or offensive to a degree that it will incite lawless action breaching public safety, peace, and order. Under this same policy, Defendant King County had run advertisements on its buses by political, religious, and other groups, including "Save Gaza" ads in 2009.[5]

It is clear that, consistent with, and pursuant to, its Advertising Policy, Defendant King County has a long and established practice of publishing a wide variety and spectrum of ads containing non-commercial speech—including, but not limited to, information related to the conflict in Gaza between Israelis and Palestinians. Publication of these ads on its buses was also authorized by and consistent with Defendant King County's Advertising Policy. Under its Advertising Policy, Defendant King County had run advertisements by political, religious, and other groups.

It is also worth noting that these ads, with similar content and similar language, have been published in King County, without incident. For example, the use of the phrase "Stop Funding Israel's War Crimes" has been prevalent in Seattle for several years.[6] Perhaps even

---

[4] Defendant King County administered or implemented this Advertising Policy, in part, through Titan, its agent.

[5] Copies of the "Save Gaza" ad are attached to the Mast Decl. and marked collectively as Exhibit C.

[6] Copies of photographs from public demonstrations in Seattle in 2008 and 2009 are attached to the Mast Decl. and marked collectively as Exhibit D.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

more importantly, the phrase "Stop Israeli War Crimes", a phrase quoted in SeaMAC's ad, has been published at public demonstrations in King County as recently as January 8, 2011 (after King County decided not to publish our ad), without incident.[7]

By virtue of this long established practice and implementation of its Advertising Policy, Defendant King County's buses were a designated public forum.

At the same time Defendant King County disclosed its change of course and refusal to publish SeaMAC's ad, it also announced its intent to implement an "Interim Transit Advertising Policy" and indicated that this new policy was meant to "advance the primary purpose" of the transit advertising program—to generate revenue to benefit the transit system.[8] Among its prohibitions, this new, interim policy prohibits "[a]ny advertising from non-governmental entities if the subject matter and intent of said advertising is non-commercial." *Interim Metro Transit Advertising Policy*, Dec. 23, 2010, at 4. It appears that the effect of this policy allows Defendant King County to refuse all non-commercial advertisements.

It is worth observing that this new, interim policy does not apply to SeaMAC's ad. This new, interim policy—which was announced at the same time Defendant King County decided to change course and cancel SeaMAC's ad—confirms, however, that SeaMAC's ad was authorized by and complied with the Advertising Policy in place at the time its ad was submitted and approved.

---

[7] Copies of photographs where the phrase "Stop Israeli War Crimes" has been used at public demonstrations in King County as recently as January 8, 2011 (after King County decided to not publish the SeaMAC ad), are attached to the Mast Decl. and marked collectively as Exhibit E.

[8] Included in its litany of assertions that this interim policy would advance this "primary purpose", Defendant King County claimed that this interim policy would support transit revenues, prevent the appearance of favoritism by the County, prevent the risk of imposing views on a captive audience, maintain a position of neutrality on controversial issues, preserve the marketing potential of the advertisement spaces, maximize ridership, prevent harm or abuse that may result from running offensive advertisements; reduce the diversion of resources from transit operations that is caused by controversial advertisements; and advance police power and public health interests to avoid content that may be harmful to minors and other members of the public. *Interim Metro Transit Advertising Policy*, Dec. 23, 2010, at 1-2.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

## ISSUE PRESENTED

Whether this Court should issue an order directing Defendant King County to immediately publish SeaMAC's ad, given that (1) SeaMAC is likely to succeed on the merits of its claims, (2) SeaMAC will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) issuance of the injunction is in the public interest.

## EVIDENCE RELIED UPON

Declaration of Jeffrey Grant (together with the attached Exhibits A, B, and C)

Declaration of Ed Mast (together with the attached Exhibits A-E)

## AUTHORITY

***Preliminary Injunctive Relief Should Be Granted***

"In order to obtain injunctive relief, the party seeking the injunction must demonstrate that 'he is *likely* to succeed on the merits [and] that he is *likely* to suffer irreparable harm in the absence of preliminary relief.'" *Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 U. S. Dist. LEXIS 69632, at 3 (W.D. WA, at Seattle) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).

In addition, a "plaintiff seeking a preliminary injunction must also show 'that the balance of equities tips in his favor, and that the injunction is in the public interest.'" *Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 U. S. Dist. LEXIS 69632, at 3-4 (W.D. WA, at Seattle) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).

As demonstrated more fully below, these criteria are clearly satisfied in this action.[9]

***SeaMAC's Ad Is Constitutionally Protected Free Speech***

In order to determine whether Defendant King County has violated SeaMAC's First Amendment Right by refusing to run its ad, this Court must address three primary issues.

---

[9] This Court has the discretion to waive the need for Plaintiff SeaMAC to give security in this case, as it is unlikely that Defendant King County will sustain costs or damages if it is later determined that this Defendant King County was "wrongfully enjoined or restrained". Fed. R. Civ. P. 65(c).

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

*First*, Defendant King County's bus advertising panels must be classified under the Supreme Court's "forum approach" for assessing the validity of restrictions on the use of government property, *see Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). *Second*, the relevant level of judicial scrutiny for such a forum must be determined, based on the type or classification of public forum. *Third*, it must be determined whether Defendant King County properly applied the relevant standard in rejecting SeaMAC's ad.

In this case, the proper classification for the forum in question—public transportation buses—is that of a designated public forum, and the level of judicial analysis is that of strict scrutiny (the restriction of speech must be narrowly drawn to achieve a compelling governmental interest in order to pass constitutional muster). It is clear that Defendant King County's restriction of SeaMAC's right of free speech was done improperly.

***King County's Bus Advertising Panels Constitute a Designated Public Forum***

The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). Forum analysis divides government property into three categories (1) *public forum*—a place that has traditionally been available for public expression (*e.g.*, public parks); (2) *designated public forum*—a non-traditional forum that the government has opened for expressive activity by part or all of the public; and (3) *non-public forum*—all remaining government property. *See id.* at 800, 802-03; *Perry v. Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 & n.7 (1983).

In classifying the relevant forum, the Court has "focused on the access sought by the speaker." *Cornelius*, 473 U.S. at 801. Here, the relevant forum at issue is the exterior

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

advertising spaces, or panels, on Defendant King County's buses.[10]

Where there is a policy governing the display of advertisements by transit authorities, the exterior panels of buses used for advertising, the debate centers on whether such panels constitute a designated public forum or a non-public forum. *See e.g.*, *Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.*, 148 F.3d 242, 248 (3d Cir. 1998) (holding that a transit authority's advertising space did not constitute a traditional public forum).

The creation of a designated public forum requires a decision by the government to "intentionally open[] a nontraditional forum for public discourse." *See Cornelius*, 473 U.S. at 802-03; *Christ's Bride Ministries*, 148 F.3d at 248 ("A designated public forum is created because the government so intends. Inaction does not make such a forum; neither does the allowance of 'limited discourse.'" (quoting *Cornelius*, 473 U.S. at 802)). In determining if the government created a designated public forum, courts have looked to the government's intent with regard to the forum in question—whether the government clearly and deliberately opened the forum to expressive conduct—considering the government's policy and practice, the nature of the property, and the property's compatibility with expressive activity. *See Cornelius*, 473 U.S. at 802-03; *Christ's Bride Ministries*, 148 F.3d at 248.[11]

Various Circuit Courts have concluded that advertising space on government-run buses becomes a designated public forum where the transit authority has permitted advertising on a "wide variety of commercial, public-service, public-issue, and political ads," *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225, 1232 (7th Cir.

---

[10] *See Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 976 (9th Cir. 1998); *Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.*, 148 F.3d 242, 248 (3d Cir. 1998) ("[The plaintiff] . . . sought access only to the advertising space leased out by [the transit authority] . . . We conclude, therefore, that the forum at issue is [the transit authority's] advertising space.").

[11] It may not be enough to simply demonstrate that the government has opened a property for communication, *see Children of the Rosary*, 154 F.3d at 976-77 (characterizing exterior bus panels used for advertising as a non-public forum and stating that, "*Lehman* undermines appellants' claim that if a city has opened a property for communication, the property becomes a designated public forum"); that is, the question becomes whether the government has "expressly" dedicated its advertising space to "speech activity." *U.S. v. Kokinda*, 497 U.S. 720, 726-27 (1990). In this vein, courts have considered the government's past practice in conjunction with the purpose of the forum. *See, e.g.*, *Cornelius*, 473 U.S. at 47-48.

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

1985), or where the transit authority has permitted "political and other non-commercial advertising generally" on the exterior of buses, *New York Mag. v. Metropolitan Transp. Auth.*, 136 F.3d 123, 130 (2d Cir. 1998) (holding that, because the transit authority allowed both commercial and political speech, the outside of its buses constituted designated public forums). *See also Christ's Bride Ministries*, 148 F.3d at 252 ("We conclude then, based on [the transit authority's] written policies, which specifically provide for the exclusion of only a very narrow category of advertisements, based on [the transit authority's] goals of generating revenues through the sale of ad space, and based on [the transit authority's] practice of permitting virtually unlimited access to the forum [having allowed, among other advertisements, religious messages, an advertisement criticizing a political candidate, advertisements concerning AIDS education and abortion], that [the transit authority] created a designated public forum. Moreover, it created a forum that is suitable for the speech in question, *i.e.*, posters which presented messages concerning abortion and health issues . . . We need not define the precise boundaries of the forum . . . The topic of abortion and its health effects were . . . 'encompassed within the purpose of the forum.'" (quoting *Cornelius*, 473 U.S. at 806)).

Based on Defendant King County's Advertising Policy which applies to SeaMAC's ad, and its past practices, it is clear that that Defendant King County had allowed a "wide variety" of "political and other non-commercial" advertisements and, thus, transformed the exterior bus panels of its buses into designated public forums. Similar to the policies which have been held to create a designated public forum in other cases, Defendant King County's Advertising Policy prohibited only a few categories of ads (*e.g.*, those concerning tobacco products) and allowed for great discretion on the part of Defendant King County to decide which advertisements were "objectionable" based on community standards. *Planned Parenthood*, 767 F.2d at 1232-33 (holding that the transit authority had created a designated public forum because it maintained no system of control over the advertisements that it accept[ed] . . . other than the general contractual directive . . . to refuse vulgar, immoral, or disreputable advertising" and "allowed its advertising space to be used for a wide variety of commercial, public-service, public-issue, and political ads"; noting also that the transit authority had no policy pursuant to which the advertisement at issue was excluded); *Christ's*

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

*Bride Ministries*, 148 F.3d at 254 (noting that no policy or practice demonstrated that the government intended the forum to be closed to the speech at issue; finding that "the record points exactly the other way. In its efforts to generate advertising revenues, [the transit authority] permitted abortion-related and other controversial ads concerning sexuality"; and holding that the transit authority's action did not survive strict scrutiny, such that the transit authority violated the First Amendment when it chose to remove the ads at issue).

The evidence establishes two important conclusions. *First*, Defendant King County has dedicated the exterior panels of its buses to "expression in the form of paid advertisement." *Id*. at 250 ("The nature of the forum is partly commercial, consistent with the goal of [the transit authority] to earn a profit on its advertising space . . . However, [the transit authority] has also used the advertising space to generate a profit through *expressive* activity. This expressive use has not interfered with providing rail transportation facilities to the public. Thus, the nature of the forum suggests . . . that the government has dedicated the space to expression in the form of paid advertisements." (emphasis in original)).

*Second*, Defendant King County opened the forum provided by its exterior bus panels to discourse about the very political issue depicted in SeaMAC's ad by having run similar ads in 2009.

As a consequence, Defendant King County's rejection of SeaMAC's ad ran afoul of the First Amendment. *See, e.g.*, *Christ's Bride Ministries*, 148 F.3d at 253. ("[The transit authority] claims that the forum is closed to all speech, and that short of viewpoint discrimination, [the transit authority] can make any content-based restrictions it chooses. [The transit authority's] prior acceptance of a broad range of advertisements cuts particularly strongly against this claim.").

***Defendant King County's Decision to Limit SeaMAC's Speech Is Subject To Strict Scrutiny***

When the government seeks to restrict speech by restricting access to its own property, the kind of scrutiny to which this restriction is subjected depends on how we categorize the property as a forum for speech. *Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. at 678-79.

In a designated public forum, the government's content-based restrictions on private speech must survive strict scrutiny (*i.e.*, the restriction must be narrowly drawn to achieve a

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

compelling governmental interest) in order to pass constitutional muster. *Perry***,** 460 U.S. at 45-46.

Defendant King County's buses exterior panels are a designated public forum, because Defendant King County has a long and established practice and policy of displaying ads similar to SeaMAC's. In this case, Defendant King County cannot demonstrate that its censorship of SeaMAC's freedom of speech was narrowly drawn to achieve a compelling governmental interest.

SeaMAC is, therefore, likely to prevail on its constitutional claim that Defendant King County has violated its First Amendment rights.

***SeaMAC Will Suffer Irreparable Injury if Defendant King County Censors Its Free Speech***

The injury to SeaMAC caused by Defendant King County's unlawful censorship of free speech is likely, *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008), and imminent, *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674-75 (9th Cir. 1988).

Defendant King County's unilateral and improper decision to publish has prevented SeaMAC from publishing its message—in an economical and effective manner. Moreover, the timing of the ad was important to SeaMAC—during the two year anniversary of the Israeli bombing campaign in Gaza during December 2008 through January 2009.

The injury to SeaMAC is, therefore, likely, imminent, and irreparable.

***The Balance of Equities Are in Favor of SeaMAC***

In this case, the benefits of promoting more speech, not less, and of refusing to limit speech in response to fear, or aggressive email tactics, easily "tips the balance of equities" in favor of SeaMAC.

***An Injunction Is in the Public Interest***

In this case, the public interest includes promoting a policy of free speech—a constitutionally protected right.

Enforcement of constitutional rights is in the public interest—a conclusion so firmly true as to need no citation to authority. Moreover, all citizens—governments included—must be held accountable to their commercial promises.



**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

***Summary***

Defendant King County's efforts to censor SeaMAC's right of free speech—in light of Defendant King County's long and established practice of wide spectrum of ads published on its buses, its Advertising Policy, and its Contract for Advertising—can no longer be maintained.

Immediate, injunctive relief is appropriate because (1) SeaMAC is likely to succeed on the merits of its claims, (2) it will likely suffer irreparable harm in the absence of this injunctive relief, (3) the balance of equities tips in its favor, and (4) issuance of injunctive relief is in the public interest.

## CONCLUSION

It is respectfully requested that this Court grant Plaintiff SeaMAC's Motion for Preliminary Injunction and direct Defendant King County to publish Plaintiff SeaMAC's ad on its buses within 24 hours of this Court's Order.[12]

DATED this 19th day of January, 2011.

SKELLENGER BENDER, P.S.

By s/ Jeffrey C. Grant
Jeffrey C. Grant, WSBA #11046

Cooperating Attorneys for the
ACLU of Washington Foundation

ACLU OF WASHINGTON FOUNDATION
Sarah A. Dunne, WSBA # 34869
Lindsey Soffes, WSBA # 41506
901 5th Avenue, Suite 630
Seattle, WA 98164-2008
Telephone: (206) 624-2184

Attorneys for Plaintiff Seattle
Mideast Awareness Campaign

[12] The logistics of publication (*e.g.*, the number of buses, the number of days, and the like) should be governed by the parties' Contract for Advertising or further Order of this Court.

MOTION FOR PRELIMINARY INJUNCTION OF PLAINTIFF
SEATTLE MIDEAST AWARENESS CAMPAIGN
PAGE – 12

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 na18gc3338.002

## CERTIFICATE OF SERVICE

I certify that on January 19, 2011 I electronically filed the Motion for Preliminary Injunction of Plaintiff Seattle Mideast Awareness Campaign and this Certificate of Service with the Clerk of the Court using the CM/ECF system. In addition, I sent a copy to Jennifer Ritchie, King County Prosecuting Attorney, by email to:

jennifer.ritchie@kingcounty.gov

By s/ Jule Sprenger

Jule Sprenger
Legal Assistant
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
Tel: (206) 623-6501
Fax: (206) 447-1973
Email: jsprenger@skellengerbender.com

MOTION FOR PRELIMINARY INJUNCTION OF PLAINTIFF SEATTLE MIDEAST AWARENESS CAMPAIGN
PAGE – 13

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 na18gc3338.002