Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE MIDEAST AWARENESS CAMPAIGN, a Washington non-profit corporation,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KING COUNTY, a municipal corporation,<br><br>　　　　　　　　　　Defendant. | NO. 11-cv-00094 RAJ<br><br>PLAINTIFF SEAMAC'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION<br><br>**NOTED FOR HEARING:**<br>**FEBRUARY 14, 2011**<br>**10:00 A.M** |

"They that can give up essential liberty to obtain a little temporary safety deserve neither liberty nor safety."[1]

### INTRODUCTION

Plaintiff Seattle Mideast Awareness Campaign (SeaMAC) is asking this Court to affirm the fundamental constitutional principle that freedom of speech is best served by more speech, not less—even more so when the excuse for censorship is based on fear, or the perception of fear.

King County's efforts to recast the issue in this case, as well as the facts, presently before this Court are unavailing. Its efforts to censor SeaMAC, specifically, and speech, more generally, cannot be countenanced.

---

[1] Benjamin Franklin (Historical Review of Pennsylvania cited in J. Bartlett, Bartlett's Familiar Quotations 227 (C. Morley & L. Everett ed. 1951) (quoted in USA v. USDC (EDMI, So. Div.), 444 F.2d.651, 664 (6th Cir. 1971).

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 1
12576 00101 nb119p32xp

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

The political message in the SeaMAC poster is based on conclusions reached by respected, independent, and informed authorities[2]; it had been fully reviewed and officially approved by Defendant King County; and it had been paid for by SeaMAC. A written contract between SeaMAC and Defendant King County (via its agent Titan Outdoor LLC) had been signed. Moreover, and most importantly, the SeaMAC poster enjoyed the freedom, and protection, of the First Amendment.

SeaMAC respectfully requests, therefore, that this Court grant its Motion for Preliminary Injunction and direct Defendant King County to display the SeaMAC poster as it had earlier agreed to do.

## DISCUSSION

*Summary*

In opposing SeaMAC's effort to return to the status quo that existed before it changed course, Defendant King County has offered three arguments (1) there was an "unprecedented" response to the display of SeaMAC's poster on its buses; (2) its buses are not a "designated public forum"; and (3) so-called "counter ads", which were presumably offered by those who were so opposed to the SeaMAC poster and who were presumably involved in the email/telephone protest campaign Defendant King County has so loudly complained about, were so offensive and in violation of its own Advertising Policy that censoring SeaMAC's approved poster was justified.

*The Public Response Did Not Justify Censoring SeaMAC's Freedom to Speak*

Defendant King County has heatedly characterized the communications it received before announcing its decision to withdraw display of SeaMAC's poster—offering such

---

[2] For example, the Report of the United Nations Fact Finding Mission on the Gaza Conflict, following its extensive investigation, concluded Israeli military forces committed war crimes and breaches of humanitarian law. Amnesty International found evidence of Israeli soldiers using Palestinian civilians, including children, as human shields— a war crime in violation of the Geneva Convention.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 2

12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

hyperbole characterizations as "vitriolic", an 'unprecedented" volume of "expression of fear" and "concern"—leading to a situation that had become "polarized".

Defendant King County's willingness to raise the temperature seems most pronounced by its willingness to claim the risk of "terrorist violence" as a reason why it canceled the display of the SeaMAC poster. As with much of its other claims regarding the potential of disruption and safety concerns, Defendant King County has protested too much. For example, the posting on the "website affiliated with the terrorist group Hamas", which apparently was the source of the "risk of terrorist violence", was nothing more than a summary of news stories reported in the :mainstream media in the United States.

In fact, the "terrorist website" reported (in English, incidentally), accurately, that King County acknowledged that the potential that some people might be offended by posters displayed on its buses, the SeaMAC poster included, was "not enough to prevent the rolling billboards from hitting the streets." Defendant King County spokesperson Linda Thielke was quoted in this "Hamas-affiliated web-site" as saying "As a government, we are mindful of the provisions in state and federal constitutions to protect freedom of speech. So, we can't object [to] these campaigns simply because they offend some people."[3] SeaMAC agrees.

An examination of the other "evidence" offered by Defendant King County, stripped of its rhetoric, demonstrates that its fears were unfounded. The documents—copies of email messages or other written communications Defendant King County was relying on when the December 23, 2010 decision was made—all 37 of them—are neither so voluminous so as to be disruptive nor so "vitriolic" as to present a threat of public safety.[4]

What emerges from even the most cursory examination of these 37 messages is that Defendant King County's decision to censor SeaMAC's speech was based on fear, not fact.

---

[3] A copy of this "posting" is attached to the Declaration of Michael DeCapua and marked as Exhibit A (Dkt. No. 24-1, pps. 1-4.)

[4] These 37 communications stand in somewhat marked contrast to Defendant King County's apparent reference to more than 49,000 documents it has been accumulating in response to this litigation.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 3

12576 00101 nb119p32xp

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

Defendant King County has failed to demonstrate that there was any credible basis for its cry that concerns about disruption or safety justified its restriction of speech.[5]  Indeed, despite the widespread coverage about the SeaMAC poster and Defendant King County's conduct, there has been no reported disruption or violence related to this public debate.

***Defendant King County's Metro Buses Are A Designated Public Forum***

"A designated public forum exists where 'the government intentionally opens up a nontraditional forum for public discourse.'"  *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 964 (9th Cir. 1999)).  Defendant King County has emphasized its intent to not designate its buses as a public forum, relying primarily on the language in its Advertising Policy.  The analysis does not rest on Defendant King County's unilateral expressions of intent, however—particularly when its expressions of intent are different than its actions.

When analyzing the issue of whether a governmental entity has designated a forum as public, Courts have emphasized the difference between the "policy", what the governmental entity says its intent is in its abstract policy statements, and the "practice", how the governmental entity has acted.  Aware of the gap which often exists between what is said and what is done, Courts have consistently held that what "matters is what the government actually does-specifically, whether it consistently enforces the restrictions on the use of the forum that it has adopted."  *Hopper v. City of Pasco*, 241 F.3d at 1075.  When it comes to a choice between "policy" and "practice", at least with respect to the "public forum" analysis, "actual practice speaks louder than words."  *Hopper v. City of Pasco*, 241 F.3d 1076 (citing *Grace Bible Fellowship Inc. v. Maine Sch. Admin. Dist. No. 5*, 941 F.2d 45, 47 (1st Cir. 1991)).

Defendant King County's *practice* of implementing its Advertising Policy demonstrates that the exterior of its Metro buses have been designated as a "public forum".

---

[5] It does not appear that Defendant King County referred any alleged threat of disruption or violence to any law enforcement agency.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 4
12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

For years, Defendant King County has displayed messages on its buses which even it has characterized as "political advertisements", public issue advertisements", and "public service announcements".[6] More specifically, these earlier displays included the specific issue addressed by the SeaMAC poster—the conflict in Gaza.[7]

Moreover, Defendant King County's practice of implementing its Advertising Policy led its residents to recognize that its Metro buses had been designated as a public forum—a location where speech on issues of public import, even if controversial, would be free and protected.[8]

Public transportation can, of course, be designated as a public forum, as Defendant King County has acknowledged. *Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.*, 148 F.3d 242 (3d Cir. 1998) (holding that transit authority's written policies and practices created a designated public forum); *New York Mag. v. Metropolitan Transp. Auth.*, 136 F.3d 123 (2d Cir. 1998) (holding that, because the transit authority allowed both commercial and political speech, the outside of its buses constituted designated public forums); *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225, 1232 (7th Cir. 1985) (where the transit authority has permitted "political and other non-commercial advertising generally" on the exterior of buses).[9]

---

[6] Declaration of S. Shinbo ¶ 9. It is worth observing that the categories described by Ms. Shinbo and the allocation she has described need not yet be accepted by this Court, as the parties have not yet completed their discovery

[7] Declaration of E. Mast Decl. ¶ 13, Ex. C; Declaration of Rita Zawaideh, ¶ 2.

[8] Second Declaration of E. Mast Decl. ¶ 4.

[9] Several of the authorities cited by Defendant King County, in support of its argument that public transportation is not a designated public forum, are inapposite as they involve circumstances far different than those in this case. *See e.g.*, *Lehman v. City of Shaker Heights,* 418 U.S. 298, 302-04, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (no designated public forum in advertising space on city buses where a city management contract required control over subject matter of displays, and such control was consistently exercised for more than twenty-five years); *Children of the Rosary v. City of Phoenix,* 154 F.3d 972, 976 (9th Cir.1998) ("[A] review of the city's standards and practices indicates that the city has not opened a public forum [for ads on its bus panels]. The city has consistently restricted political and religious advertising"; upholding the exclusion of a religious anti-abortion ad), *cert. denied,* 526 U.S. 1131, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999).

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 5
12576 00101 nb119p32xp

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

The authority of governmental entities to restrict speech in a designated public forum is sharply circumscribed, and appropriately so. "'Restrictions on expressive activity in designated public fora are subject to the same limitations that govern a traditional public forum.' *i.e.*, strict scrutiny." *Hopper v. City of Pasco*, 241 F.3d 1074 (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 964-965 (9th Cir. 1999) (which, in turn, cited *International Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.ED.2d 541 (1992)).

As noted, Defendant King County has devoted considerable effort to emphasize the controversial nature of SeaMAC's poster. This effort, howeer, is constitutionally irrelevant. The "mere fact that the words caused controversy is, of course, patently insufficient to justify their suppression." *Hopper v. City of Pasco*, 241 F.3d 1081 (citing *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("If there is a bedrock principle of the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 537-38, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); *Cinevision*, 745 F.2d at 571.

***Defendant King County's "Linkage" With the So-Called "Counter Ads" Is Misplaced***

Curiously, Defendant King County has also interjected, improperly, the submission of "counter ads" into its relationship with SeaMAC, and SeaMAC's right of free speech. The so-called "counter ads"—which did not undergo the formal approval process under the Advertising Policy by which SeaMAC's ad was approved—are irrelevant to SeaMAC's poster and any effort to link a decision to display SeaMAC's poster with these so-called "counter ads" is improper.

As described by Defendant King County, these "counter ads", unlike the SeaMAC poster, violated the "civility standards" of its Advertising Policy and likely would not have

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 6
12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

been eligible for display on its buses.[10]  Moreover, there is no basis for Defendant King County to lawfully link the right of one citizen to speak to that of another—the SeaMAC poster and the so-called "counter ads" are separate and the rights of free speech of both must be evaluated separately.  Any other conclusion would allow one group to exercise a veto over the free speech rights of another.

### *Injunctive Relief Is Appropriate*

It is well established that, in order to obtain injunctive relief, "the party seeking the injunction must demonstrate that 'he is *likely* to succeed on the merits [and] that he is *likely* to suffer irreparable harm in the absence of preliminary relief.'"  *Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 U. S. Dist. LEXIS 69632, at 3 (W.D. WA, at Seattle) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).

In addition, a "plaintiff seeking a preliminary injunction must also show 'that the balance of equities tips in his favor, and that the injunction is in the public interest.'"  *Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 U. S. Dist. LEXIS 69632, at 3-4 (W.D. WA, at Seattle) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).

The showing of irreparable harm—that irreparable harm is likely to result to the party seeking the preliminary injunction in the absence of the injunction—is considered "the single most important prerequisite for the issuance of a preliminary injunction." *Hagen Berman*, 2009 WL, 2378732, at *4 (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 1994)).

The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary injunction.  *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C.,*

---

[10] Any suggestion by Defendant King County that the SeaMAC poster violated the "civility standards" or any other provision of its Advertising Policy is belied by the fact that it approved the SeaMAC poster.  The decision to censor was limited to concerns regarding disruption or safety—not violations of a civility provision.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 7
12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

*Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm: "[E]ven if the merits of the constitutional claim were not 'clearly established' at this early stage in the litigation, the fact that a case raises serious First Amendment questions compels a finding that there exists 'the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [Appellants'] favor.'" (quoting *Viacom Int'l v. FCC*, 828 F.Supp. 741, 744 (N.D. Cal. 1993)).

Moreover, in the Ninth Circuit at least, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano*, 303 F.3d at 973.

Finally, there is the issue of public interest. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974; *see, e.g.*, *Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (finding that a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms."); *Suster v. Marshall*, 149 F.3d 523, 530 (6th Cir. 1998) (holding that candidates for judicial office were entitled to a preliminary injunction given the likelihood of success on the merits, irreparable harm and lack of public interest in enforcing a law that curtailed political speech); *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) (stating that, in the context of a request for injunctive relief, that

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 8
12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

"[t]he public interest . . . favors plaintiffs' assertion of their First Amendment rights"); *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir 1994) (noting that, "it is always in the public interest to prevent the violation of a party's constitutional rights"); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg. Transit Authority*, 163 F.3d 341, 363-64 (6th Cir. 1998) (holding that the public interest in free speech that would be served by granting a preliminary injunction requiring the transit authority to accept the union's proposed bus advertisement outweighed any public interest to be served by denial, given that the transit authority failed to show that the public interest in safe and efficient transportation would be affected, while the denial of the advertisement would harm the public's interest in protecting First amendment rights and allowing the free flow of ideas); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding that the "strong public interest in protecting First Amendment values" favored preliminary injunctive relief).

Defendant King County's deprivation of SeaMAC's freedom of speech has caused irreparable harm and implicated the public interest—and injunctive relief is warranted.

Defendant King County's assertion that SeaMAC faces a "heightened standard of proof" in seeking injunctive relief is unsupported and inaccurate.[11]  In fact, the burden of proof here is on Defendant King County.

Defendant King County enacted the Adverting Policy in question.  Defendant King County implemented its Policy through its practice of accepting ads and posters containing "political advertisements", public issue advertisements", and "public service announcements", among others.  Defendant King County reviewed and accepted SeaMAC's poster for display on its buses.  Defendant King County reversed course and canceled the display of SeaMAC's poster—and in so doing violated SeaMAC's freedom of speech.

The burden is on King County to justify these actions—actions which are subject to strict scrutiny, but also fail under any reasonable standard of review.

---

[11] Defendant King County's Brief in Opposition, at 8.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 9
12576 00101 nb119p32xp

Skellenger Bender, PS
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

## CONCLUSION

It is respectfully requested, therefore, that this Court grant Plaintiff SeaMAC's Motion for Preliminary Injunction and direct Defendant King County to display Plaintiff SeaMAC's poster on its buses within 24 hours of this Court's Order.[12]

DATED this 11th day of February, 2011.

SKELLENGER BENDER, P.S.

By   s/ Jeffrey C. Grant
Jeffrey C. Grant, WSBA #11046

Cooperating Attorneys for the
ACLU of Washington Foundation

ACLU OF WASHINGTON FOUNDATION
Sarah A. Dunne, WSBA # 34869
Lindsey Soffes, WSBA # 41506
901 5th Avenue, Suite 630
Seattle, WA 98164-2008
Telephone: (206) 624-2184

Attorneys for Plaintiff Seattle
Mideast Awareness Campaign

---

[12] The logistics of publication (*e.g.*, the number of buses, the number of days, and the like) should be governed by the parties' Contract for Advertising or further Order of this Court.

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 10
12576 00101 nb119p32xp

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

## CERTIFICATE OF SERVICE

I certify that on February 11, 2011, I electronically filed Plaintiff Seattle Mideast Awareness Campaign's Reply Memorandum in Support of Its Motion for Relief from Deadline and this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Cynthia Gannett, Endel R. Kolde, and Jennifer Ritchie, counsel for Defendant King County.

By    s/ Jule Sprenger
Jule Sprenger
Legal Assistant
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
Tel: (206) 623-6501
Fax: (206) 447-1973
Email: jsprenger@skellengerbender.com

PLAINTIFF SEAMAC'S REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION

PAGE – 11
12576 00101 nb119p32xp

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501