Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE MIDEAST AWARENESS CAMPAIGN, a Washington non-profit corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>KING COUNTY, a municipal corporation,<br><br>                              Defendant. | NO. 11-cv-00094 RAJ<br><br>SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE<br><br>**NOTED ON MOTION CALENDAR: JULY 22, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.      INTRODUCTION

Plaintiff Seattle Mideast Awareness Campaign (SeaMAC) respectfully requests that this Court deny Defendant King County's motion to exclude the expert testimony of Richard Conte, Dkt. No. 72, because (1) Mr. Conte's experience and specialized knowledge qualify him to give reliable expert testimony (2) on an issue that is central to this case and (3) will assist the trier of fact in understanding evidence critical to SeaMAC's efforts to preserve its constitutionally protected speech. Moreover, the expertise possessed by Mr. Conte is precisely the type of expertise Defendant sought, in December 2010, in its attempts to assess the foreseeability of harm to, disruption of, or interference with its transit system.[1]

---

[1] SeaMAC joins in Defendant's request for oral argument.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 1

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

## II. STATEMENT OF FACTS

The gravamen of SeaMAC's claims is that Defendant violated SeaMAC's constitutional right of free speech when, on December 23, 2010, contrary to its own Advertising Policy, and in violation of the First Amendment, Defendant cancelled an advertisement submitted by SeaMAC (the SeaMAC Poster) and previously approved by Defendant for display on the exterior panels of Defendant's Metro buses. Dkt. No. 1.

To date, Defendant has defended its decision by asserting that, as of December 23, 2010, it was "reasonably foreseeable" that running the SeaMAC Poster on Metro buses "would result in imminent harm, disruption or interference with the transportation system," Dkt. No. 18, at 7, and therefore, section 6.4(D) of its Advertising Policy required the cancellation of the Poster. *See* Dkt. No. 18, at 16-21. The King County Executive, who made the final decision to cancel the Poster (and had made the initial decision to approve SeaMAC's Poster), testified that his reasons were based on changed circumstances—specifically, the alleged threats and complaints Defendant received after news of the SeaMAC Poster was made public. Dkt. No. 23, at ¶ 17. And, Defendant apparently relied on the opinions of several law enforcement officials when it decided to cancel the SeaMAC Poster—and later when it defended that decision—including that of Michael DeCapua, its Homeland Security Officer, Captain Lisa Mulligan, of the Metro Transit Police, and King County Sheriff Sue Rahr. Two of these officials have testified that they personally sought the input of the Federal Bureau of Investigation (FBI) or members of the local Joint Terrorism Task Force (JTTF), or that they recommended that others do so, in order to adequately assess the threat posed by the various communications received relating to the SeaMAC Poster. Ex. A to Grant Decl.;[2] Ex. B to Grant Decl.[3]

---

[2] *See* Mulligan Dep. at 80:8-12, 12-21; 81:14-17; 149:15-25; 150:1-2; 176: 6-14.

[3] *See* DeCapua Dep. at 60:18-24; 168:18-25; 169:1-5.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 2

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

On April 27, 2011, SeaMAC timely disclosed, pursuant to Fed. R. Civ. P. 26(a)(2), its intent to offer the expert testimony of Richard Conte, a former FBI agent and former member of the Seattle JTTF, on the issue of whether the various communications, including complaints and alleged threats received by Defendant (and relating to the SeaMAC Poster), made it reasonably foreseeable that harm to, disruption of, or interference with the transit system would occur if the SeaMAC Poster was run on Defendant's Metro buses.  Ex. B to Declaration of R. Conte in Support of SeaMAC's Opposition to Defendant's Motion to Exclude the Opinions of Richard Conte.  In his report, Mr. Conte concluded that there was no "evidence of a threat, or any specific act, of disruption or to public safety," and that "[e]ven collectively, the information does not demonstrate a reasonable basis to conclude that there was a threat of disruption or to public safety."  *Id.* at 2.

### III.    LEGAL ARGUMENT

**A.    *Introduction***

The Federal Rules of Evidence provide that "[i]f specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise…."  FRE 702.  The testimony must also be "based upon sufficient facts or data," be "the product of reliable principles and methods," and those principles and methods must be reliably applied to the facts of the case. *Id.*

Defendant makes two arguments under FRE 702 to support its motion to exclude Mr. Conte's expert opinions.  Neither argument has merit.  *First*, Defendant argues that Mr. Conte's testimony should be excluded because "he is not a qualified expert in transit advertising policies."  Dkt. No. 72, at 5.  This argument is irrelevant, as Mr. Conte has not sought to offer, and SeaMAC does not seek to elicit from Mr. Conte, opinions relating to the wisdom of Defendant's Advertising Policy.  Conte Decl. at ¶ 9.  *Second*, Defendant argues that Mr. Conte's opinions should be excluded because they are unreliable under *Daubert* and

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 3

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

*Kumho Tire.* This argument misses the mark, because these cases do not warrant exclusion of Mr. Conte's testimony.

**B.  *Mr. Conte is Qualified to Render an Expert Opinion on the Reasonable Foreseeability of Harm, Disruption, or Interference Presented by the Complaints and Alleged Threats Received by Defendant***

When considering the admissibility of expert testimony, trial courts are to act as gatekeepers to ensure that the testimony rests on a reliable foundation and is relevant. *Kumho Tire Company Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167 (1999). In *Kumho Tire*, the Court confirmed that the gate-keeping function it previously outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 113 S. Ct. 2786 (1993), applies whether the proffered expert testimony is predicated on "scientific," "technical," or "other specialized knowledge." *Kumho Tire*, 526 U.S. at 141, 119 S. Ct. 1167. When reviewing the reliability of non-scientific expert testimony, trial courts *may* consider one or more of the specific factors set forth in *Daubert*, but the test of reliability is a flexible one, and *Daubert*'s list of specific factors "neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141, 152, 119 S. Ct. 1167 (noting that "*Daubert* itself . . . made clear that its list of factors was meant to be helpful, not definitive"). The Ninth Circuit has made clear, in fact, that, in some cases, the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" because "reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017-18 (9th Cir. 2004) (quoting *Mukhtar v. California State Univ.*, 299 F.3d 1053, 1059 (9th Cir. 2002) (emphasis in original)).

Mr. Conte's prior professional experience as an FBI agent is more than sufficient to meet the burden set by FRE 702 to qualify him to offer testimony on the question of whether the complaints and alleged threats of violence and system disruption received by Defendant created a reasonable foreseeability that harm, disruption or interference would occur. *See*

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 4

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

*Barnes v. Continental Tire North America Inc.*, 2006 WL 2076561, at *1 (W.D. Wash. July 24, 2006) (a party must demonstrate by a preponderance of evidence that expert opinions are reliable) (internal citation omitted); *see also Hangarter*, 373 F.3d at 1018 ("[FRE] 702 'contemplates a *broad conception* of expert qualifications.'" (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (emphasis added)).  Defendant's heavy reliance on the *Daubert* factors in its reliability argument is wasted here, where Mr. Conte proposes to proffer non-scientific expertise (of the kind Defendant has relied upon) and where the reliability of his opinions is founded on his extensive experience and knowledge of the subject on which he has been asked to testify.  *Kumho*, 526 U.S. at 150, 119 S. Ct. 1167 (stating that in some cases "the relevant reliability concerns may focus upon *personal knowledge or experience*" (emphasis added)); FRE 702 Advisory Committee's note ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

Mr. Conte has more than 28 years of experience with the FBI, having graduated from the FBI New Agent Academy in 1982 and worked as a Special Agent from 1982 to 2010. Conte Decl., at ¶ 2.  During his career, Mr. Conte was a member of the FBI's first JTTF in New York City, New York (1985-1992), and senior member of the Puget Sound JTTF in Seattle, Washington (2000-2010); both posts represented full-time commitments.  Conte Decl., at ¶ 2.  For the JTTF, Mr. Conte was tasked with threat resolution (both in the short- and long-term) on a daily basis, including in the aftermath of September 11, 2001; during the Presidential Conventions in 2000; during the World Trade Organization Ministerial Conference in Seattle in 1999; during the Asia-Pacific Economic Cooperation (APEC) Conference in Seattle in 1993; in the aftermath of the United States' undertaking of the invasion of Iraq in 1990; and for the 100th Anniversary of the Statute of Liberty in New York City.  Conte Decl., at ¶ 2.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 5

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

Additionally, throughout his nearly three decade long career with the FBI, Mr. Conte provided expertise and training in counterterrorism to various law enforcement agencies; organized and coordinated complex, multi-jurisdictional counterterrorism investigations with various local, federal, and international law enforcement agencies; engaged in micro-threat resolution (involving the resolution of threats to public safety posed by local individuals but pursuant to larger terrorist goals); and partook in investigations of Islamic extremist activity. Conte Decl., at ¶ 2.[4]  As a result of his extensive law enforcement career, Mr. Conte has developed specialized knowledge on the topic of threat assessment and resolution, Conte Decl., at ¶ 2, which he applied to the facts of this case in reaching his opinions:

> [I]n my work on this case, I utilized the same methodology and relied on the same expertise in assessing the credibility of any particular potential threat that I have done throughout my professional career.  In part, I was trying to determine whether, based on the communications King County was receiving about the SeaMAC Poster, it was reasonably foreseeable that harm to, disruption of, or interference with King County's Metro transit system would result—and, on that issue, I have concluded that it was not.

Conte Decl., at ¶ 9.

Defendant has misconstrued Mr. Conte's references to "common sense" during his deposition to argue against admission of his testimony.  In addition, Defendant has ignored Mr. Conte's testimony that he relied on his extensive experience, as a law enforcement officer charged with the task of assessing the reliability of various threats, in forming his opinion of the reasonable forseeability of harm posed by the complaints and alleged threats at issue in this case.  *See* Ex. B to Conte Decl., at ¶ 2 (describing the "professional threat assessment process" he employed in his role as an FBI agent and in this case).  Common sense, applied by an experienced FBI agent, includes an assessment of the source of the communication and

---

[4] The fact that Mr. Conte has never before testified as a retained expert has no bearing on Mr. Conte's qualification as an expert in this case (just as it has no bearing for any expert witness that he or she has testified before). It is his prior experience as an FBI agent (not any experience, or lack thereof, as a witness) that renders him qualified to testify regarding the objective credibility of alleged threats.  In any event, it is worth noting that Mr. Conte gained extensive experience in testifying by way of affidavits or declarations during his career.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 6

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

the context in which the communications are being sent and received, including "the general context, the specific context, and the context of the cumulative effect." Conte Decl., at ¶¶ 4, 7. Mr. Conte's reliance on his own experience as an FBI agent in explaining the basis for his opinion is far from the inadmissible *ipse dixit* opinion suggested by Defendant. Dkt. No. 72, at 8.[5] In fact, it is the same foundation of reliability accepted by the Ninth Circuit in other cases where government experts have formed opinions based on application of their training and experience to the new facts at issue. *See, e.g.*, *U.S. v. Decoud*, 456 F.3d 996, 1014 (9th Cir. 2006) (holding that expert testimony on the meaning of words and phrases used in drug deals was properly admitted where the expert's interpretation of previously unfamiliar words was based on his training and experience, each word in the context of the specific phone call, and each phone call in the context of other phone calls he understood).[6]

There is no basis to exclude Mr. Conte's testimony as unreliable and, if Defendant questions the conclusions he has reached, the appropriate means for doing so is through cross examination and presentation of its own witnesses. *See United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996); *see also Daubert*, 509 U.S. at 595. That is to say, Defendant's objections are more properly addressed to the weight, not the admissibility, of Mr. Conte's testimony.

**C.**     *Mr. Conte's Expert Opinions Are Relevant to a Central Issue in this Case*

Defendant insists that "this case revolves around King County Metro's written advertising policy and Executive Constantine's decision under that policy." Dkt. No. 72, at 8.

---

[5] Defendant's choice of the phrase "*ipse dixit*" is curious, given that its etiology is far more complimentary—that is, that an opinion should be accepted because of who the speaker is.

[6] The case before this Court is simply not analogous to *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir. 2001), despite Defendant's feeble attempt to draw a parallel. In *Jinro*, the Ninth Circuit excluded the testimony of a proposed "cultural expert" who sought to inject testimony about Korean businesses that was premised on unsupported cultural stereotypes stemming from personal investigation, his "hobby" of studying Korean business practices, unspecified input from office staff, and his marriage to a Korean woman. *Id.* at 1009. In stark contrast, Mr. Conte's testimony relies on the training received, experiences had, and skills developed during his almost three decade long career as a public servant—the farthest cry from "impressionistic generalizations" about a culture concocted in his personal life.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 7

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

This is only partially true. Omitted from Defendant's argument is that its written advertising policy provides that material must be rejected if it is "so objectionable . . . as to be reasonably forseeable that it *will* result in harm to, disruption of, or interference with the transportation system," and, it is this portion of Defendant's Advertising Policy that is relevant to its decision to censor SeaMAC's speech.  Ex. C to Grant Decl. (emphasis added).

Defendant's reliance on *Acton v. Target Corporation* is misplaced. 2009 WL 5214419 (W.D.Wash. Dec. 22, 2009).  In *Acton*, a law enforcement expert's opinion was offered on the topic of whether the level of force used in a particular instance was excessive. *Id.* at *1. The proposed expert witness in *Acton* had experience evaluating whether the level of force used by an officer in particular circumstances was appropriate or excessive for purposes of Fourth Amendment analysis. *Acton*, however, was an employment discrimination case, and the defendant private employer's use of force was not subject to the same constitutional limitations that would have bound a public agency and its employees—it was free to adopt its own definition of "excessive" in evaluating its employees' use of force against customers and apply that definition in making personnel decisions. Therefore, the law enforcement expert witness testimony was not relevant and properly excluded. *Id.* at *5.

Here, in contrast, under its own Advertising Policy, Defendant was not free to reject an advertisement for any reason, and, under the First Amendment, it was not free to adjust its interpretation of its Advertising Policy to justify rejection of a message based on a subjective belief about whether content of the advertisement was objectionable.  As of December 2010, Defendant's Advertising Policy was to accept advertisements on a wide range of subjects, including political, religious, and public issue ads—even if they were controversial. Defendant has insisted that its decision to cancel the SeaMAC Poster was driven by the number and nature of complaints and alleged threats it received in the days after news of it

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 8

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

was publicized, not by the message expressed by the Poster itself.[7]  Further, Defendant's Advertising Policy did not permit exclusion of advertisements on the basis that they were so objectionable that placing them on a bus *might* result in harm, disruption, or interference; it set a higher bar for excluding potentially controversial advertisements—that such harm, disruption, or interference *will* result.  Not surprisingly, in making his determination of whether the SeaMAC Poster violated the Advertising Policy, Executive Constantine sought the input of trained law enforcement officials.  Similarly, Mr. Conte's expertise and experience in objectively evaluating the credibility of oral or written statements expressing anger or the intent to engage in unlawful or violent acts is relevant to and will assist the trier of fact in assessing whether Defendant's decision to cancel the SeaMAC Poster pursuant to this Policy provision violated SeaMAC's constitutionally protected right to free speech.[8]

### D.   *Mr. Conte's Expert Testimony Will Assist the Trier of Fact*

Whether the use of expert testimony is proper in any given circumstance can be addressed by inquiring into whether "the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject in the dispute."  FRE 702 Advisory Committee's notes (quoting Ladd, *Expert Testimony*, 5 VAND. L. REV. 414, 418 (1952)).[9]

---

[7] Indeed, were Defendant to now change its position and attempt to argue that the content of the SeaMAC Poster itself was so offensive or insulting that it could be excluded under the provisions of its own Advertising Policy, Defendant would be hard pressed to reconcile that new position with its initial approval of SeaMAC's Poster and with the First Amendment's clear prohibition on government censorship of a disfavored viewpoint.

[8] King County's assertion that "threat assessments by either the FBI or JTTF are not focused on the range of disruption concerns that are codified in [Metro's transit advertising policy]," Dkt. No. 72, at 10, ignores the fact that Defendant sought threat assessments from the JTTF before making its decision to cancel the SeaMAC Poster.  *See, e.g.*, DeCapua Dep. at 109:10-15, 115:22-24.

[9] The need for professional expertise in assessing whether a potential threat is credible is widely recognized.  For example, it was recently reported that potential email threats received by Republican presidential contender Michelle Bachman referred certain email correspondence to law enforcement.  *See* Caputo, M., THE SEATTLE TIMES, at A6 (July 12, 2011).

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 9

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

In this case, Defendant's own actions demonstrate that specialized understanding is important and necessary in understanding whether Defendant reasonably applied section 6.4D of its Advertising Policy in cancelling the SeaMAC Poster. It has been well documented that Defendant sought assistance on the issues of foreseeability of harm and credibility of alleged threats from the FBI, which included initiating contact with the FBI and other federal law enforcement officials; communicating and meeting with Marlon Hoyle, the Metro Transit Police's JTTF representative during the week of December 19, 2010; and reporting about or forwarding copies of alleged, potential threats received to the FBI. *See* Ex. A to Grant Decl.;[10] Ex. B to Grant Decl.;[11] *see also* Ex. D to Grant Decl.[12] It should be noted that, in fact, Mr. Hoyle and his supervisor concluded that Defendant was not facing a threat sufficient to trump the First Amendment right of SeaMAC. Ex. E to Grant Decl.

In light of this evidence of its determination to seek advice from the FBI and the JTTF, it is disturbing that Defendant would now argue that Mr. Conte's testimony should be excluded on the grounds that it would be confusing to a jury or that a jury would give undue deference to Mr. Conte's testimony *because* he is a former FBI agent and member of the Puget Sound JTTF. Dkt. No. 72, at 10.

Finally, Defendant's disingenuous argument that SeaMAC seeks to erect a "terrorist straw-man" through the presentation of Mr. Conte's testimony must be rejected. Dkt. No. 72, at 11. It was Defendant that first raised the specter of terrorist acts, when doing so was to its advantage. *See, e.g.*, Dkt. No. 18, at 20 (asserting that, under the circumstances, "it was responsible for King County to act to reduce Metro's visibility to terrorist groups and *the risk of terrorist violence*...."). SeaMAC should be afforded the opportunity to counter the suggestion that allowing the SeaMAC Poster to run on Defendant's Metro buses might have

---

[10] Mulligan Dep. at 27:6-8, 80:5-12; 80:16-21; 105:18-25, 106:1-13, 149:15-23.

[11] DeCapua Dep. at 59:25, 60:13-24, 84:3-9, 104:8-13, 109:11-15, 126:3-12, 168:18-25, 169:5.

[12] Brown Dep. at 39:19-25, 40:1-3.

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 10

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

created a risk of terrorist violence or other harm, and Mr. Conte is qualified to offer testimony on that point.

### E. *This Court's Order on Motion for Preliminary Injunction Was Not a Final Order*

It must also be noted that Defendant's attempt to limit the factual issues in dispute by relying on conclusions from this Court's Order on Motion for Preliminary Injunction is contrary to Supreme Court precedent and must be rejected. Dkt. No. 72, at 2, 9. Courts recognize that "[t]he time pressure involved in a request for a preliminary injunction requires courts to make determinations without the aid of full briefing or factual development, and make all such determinations necessarily provisional." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 604 n.7 (1984). Accordingly, findings of fact and conclusions of law made by a court in granting or denying a preliminary injunction are not binding at a trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Southern Oregon Borter Fair v. Jackson County, Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004) (noting the "general rule" that "decisions on preliminary injunctions are not binding at a trial on the merits and do not constitute the law of the case"). Particularly in this case, where significant discovery has been undertaken—relating, among other issues, to the purposes of the forum, the reasons for the cancellation of the SeaMAC Poster, and the substance and context in which the complaints and alleged threats were considered—the Court's early determination on a motion for preliminary relief, premised on the limited facts then before the Court, does not bind this Court's later determinations, based on all the relevant facts and circumstances elicited in the course of discovery.

////

////

////

////

////

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 11

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

## IV. CONCLUSION

SeaMAC respectfully requests that this Court deny Defendant's Motion to Exclude Opinions of Richard Conte.

DATED this 18th day of July, 2011.

        SKELLENGER BENDER, P.S.

        By    s/ Jeffrey C. Grant
        Jeffrey C. Grant, WSBA #11046
        Cooperating Attorneys for the
        ACLU of Washington Foundation
        ACLU OF WASHINGTON FOUNDATION
        Sarah A. Dunne, WSBA # 34869
        M. Rose Spidell, WSBA # 36038
        Lindsey Soffes, WSBA # 41506
        901 5th Avenue, Suite 630
        Seattle, WA 98164-2008
        Telephone: (206) 624-2184

        Attorneys for Plaintiff Seattle Mideast Awareness Campaign

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 12

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw

**CERTIFICATE OF SERVICE**

I certify that on July 18, 2011, I electronically filed SeaMAC's Opposition to Defendant's Motion to Exclude Opinions of SeaMAC's Expert Richard Conte, the proposed form of Order, and this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Cynthia Gannett, Endel R. Kolde, and Jennifer Ritchie, counsel for Defendant King County.

By    s/ Jule Sprenger           
Jule Sprenger
Paralegal
SKELLENGER BENDER, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
Tel: (206) 623-6501
Fax: (206) 447-1973
Email: jsprenger@skellengerbender.com

SEAMAC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF SEAMAC'S EXPERT RICHARD CONTE
PAGE – 13

**Skellenger Bender, PS**
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

12576 00101 ng18d530pw