Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATTLE MIDEAST AWARENESS
CAMPAIGN, a Washington non-profit
corporation,

                             Plaintiff,

       vs.

KING COUNTY, a municipal corporation,

                         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:11-cv-00094-RAJ

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

*Noted for August 12, 2011*

<u>Oral Argument Requested</u>

## I.    NATURE OF CASE AND RELIEF REQUESTED

This case is about whether a local government responsible for safe and efficient public transportation may impose reasonable, viewpoint neutral restrictions on the advertisements displayed on the exterior of its buses. Despite Plaintiff's assertion that its interests trump those of the public, bus operators, and passengers, the undisputed facts establish the constitutionality of the advertising restrictions in effect at the time this action arose.

Plaintiff, Seattle Mideast Awareness Campaign (SeaMAC), filed this action, pursuant to 42 U.S.C. § 1983, alleging that Defendant King County violated Plaintiff's First Amendment

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 1
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

rights when the Metropolitan Transit Division (Metro) of the County's Department of

Transportation (KCDOT) refused to display SeaMAC's advertisement (SeaMAC Ad) on Metro

buses.  Dkt #s 1, 70.   In addition to its request for nominal damages, Plaintiff asks for

declaratory and injunctive relief that would direct King County to accept and display the

SeaMAC Ad.  Plaintiff has also added a claim of economic injury and demands both liquidated

and compensatory damages. Dkt. #70.

This Court already ruled in King County's favor when it denied Plaintiff's request for a

preliminary injunction.  Now, after months of discovery, numerous depositions, and the

disclosure of thousands of documents, nothing has changed.  This Court should dismiss

Plaintiff's claims with prejudice because the pleadings, discovery, and affidavits filed in this case

establish that there are no genuine issues as to any material fact and Defendant is entitled to

judgment as a matter of law.

## II.    STATEMENT OF FACTS

**A.    Undisputed Facts Regarding Metro's Mission and the Purposes of Its Advertising Forum**

Metro's bus service is the backbone of the public transportation system of King County,

including the Seattle metropolitan area. Declaration of Dow Constantine (Dkt. #23)  at ¶4;

Declaration of Kevin Desmond (Dkt. #25) at ¶5.  It operates 245 bus routes over a service area of

2,134 square miles, with approximately 350,000 passenger-boardings daily and 110 million

boardings annually.  Desmond Dec. at ¶7.  Metro's ridership consists of people who are

dependent on or choose public transportation for their mobility needs, and includes riders with

special needs and disabilities. *Id.* at ¶5.

The King County Code (KCC) describes Metro's mission as the provision of safe, secure,

comfortable, convenient, and reliable transportation services for the riding public.  KCC

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 2
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

28.96.020.A.1-5; *see also* KCC 28.96.210; Desmond. Dec. at ¶4.  To improve regional mobility, Metro also tries to attract new users to public transit.  *Id.*; KCC 28.96.020.A.2.

Metro runs an advertising program in order to provide supplemental financial support for its transit operations.  Desmond Dec.at  ¶8; Declaration of Sharron Shinbo (Dkt. 31) at ¶4; Declaration of Endel Kolde In Support of Motion for Summary Judgment, Ex. A at 8:2-7.  As part of that program, Metro sells advertising space on the exterior of its buses.  Shinbo Dec. at ¶7.  Titan Outdoor LLC (Titan) serves as Metro's advertising contractor.  Shinbo Dec. at ¶2.  In 2010, when the events that gave rise to this dispute occurred, King County's advertising program was governed by the specific terms contained in its contract with Titan (Titan Contract); that contract had been in effect since 2005.  *Id.* at ¶4, Ex. A.

When SeaMAC submitted its proposed ad to Metro in the fall of 2010, King County's advertising policy was expressed both in the KCC and in specific restrictions outlined in Section 6 of the 2005 Titan Contract.  *Id.* at ¶4, Ex. A at 4-5.

First, KCC 28.96.020.A provides that transit properties are not forums for public debate:

In furtherance of its proprietary function as provider of public transportation, the county makes a variety of transit properties available to persons who use public transit services.  Although transit properties may be accessed by the general public, *they are not open public forums either by nature or by designation.* Transit properties are intended to be used for public transit-related activities and provide little, if any space for other activities.

(emphasis supplied)

Similarly, KCC 28.96.210 regulates commercial activities on transit property as follows:

As part of its proprietary function as the provider of public transportation, the county seeks to generate revenue from the commercial use of *transit vehicles*, the tunnel and other passenger facilities *to the extent such commercial activity is consistent with the security, safety, comfort and convenience of its passengers.* Accordingly, all commercial activity is prohibited on transit property except as may be permitted by the county in a written permit, concession contract, license agreement, *advertising agreement* or other written agreement.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 3
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

(emphasis supplied)

Second, Section 6 of the 2005 Titan Contract enumerated specific subject-matter and other content-based advertising restrictions. Shinbo Dec. at ¶6, Ex. A. Those restrictions prohibited advertising that depicted tobacco or alcohol products, illegal activity, certain films and video-games, and sexual or excretory activity. *Id*. In addition, Sections 6.4 (D) and (E) contained the following two restrictions that are at issue here:

> The Consultant shall not place in or on a transit vehicle any advertising that contains or involves the following:

> D.   Any material that is so objectionable under contemporary community standards as to be reasonably foreseeable that it will result in harm to, disruption of, or interference with the transportation system.

> E.   Any material directed at a person or group that is so insulting, degrading or offensive as to be reasonably foreseeable that it will incite or produce imminent lawless action in the form of retaliation, vandalism or other breach of public safety, peace and order.

Shinbo Dec, at ¶6, Ex A at 5.

Metro actively enforced this policy and rejected advertisements that violated its restrictions. Shinbo Dec. at ¶¶5-6; Kolde Dec., Ex. A at 15:10-16:22; Kolde Dec., Ex. B at 35:21-36:24. Alcohol and tobacco content were the most common reasons for rejection of a proposed ad, but ads were rejected on other bases as well. Shinbo Dec. at ¶8. For example, in 2009, Metro determined that a proposed ad, which read, "Hate Crimes Committed by Cults are Destroying the USA; State Hate Committed by Navy Family", violated Section 6.4(C) and (D) of the Contract. 2d Shinbo Decl. (Dkt. #32), Ex. 1. Metro directed Titan to reject the ad, but the ad sponsors withdrew the ad before it was formally denied. 2d Shinbo Dec. at ¶¶4-5.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 4
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

**B.** **Undisputed Facts Regarding King County's Decisions to Display and then Cancel the SeaMAC Ad**

On October 18, 2010, Titan notified King County that SeaMAC was proposing an external bus ad with the text "ISRAELI WAR CRIMES: YOUR TAX DOLLARS AT WORK" and accompanying graphics of a refugee camp. Shinbo Dec. at ¶14, Ex. B; Kolde Dec., Ex. B at 26:2-20, 34:7-35:14. Subsequently, SeaMAC altered the graphic to show a group of children next to a bomb-damaged building. Shinbo Dec., Ex.C; Kolde Dec., Ex. B at 39:16-40:19. Although the County found the Ad controversial, it was determined that there was insufficient information to conclude that the Ad would result in the adverse impacts described in Contract Sections 6.4 (D) and (E), i.e., harm to or disruption of the Metro transit system. Shinbo Dec. at ¶15; Constantine Dec. at ¶5; Kolde Dec., Ex. C at 13:12-21, 15:12-22, 16:5-17:7. On December 14, 2010, the SeaMAC Ad was approved and scheduled to run on 12 Metro buses for four weeks, beginning December 27, 2010. Shinbo Dec. at ¶¶15-16, Ex. D.

On Friday, December 17, 2010, a local television station aired a news story about the SeaMAC Ad. Constantine Dec. at ¶6; Shinbo Dec. at ¶17. In response, King County began to receive an unprecedented numbers of calls and emails from the public; the overwhelming majority of the feedback was negative. Declaration of Carri Brezonick (Dkt. # 20) at ¶¶6-17, Exs. A-D; Declaration of Laurie Brown (Dkt. #21) at ¶¶5-11; Kolde Dec., Ex. D at 40:18-41:5, 43:25-44:13, 45:6-11, 88:17-21, 93:24-94:20, 107:22-108:1; *see also*, Kolde Dec., Ex. B at 50:1-13. The volume and content of the complaints exceeded the scope of any prior response to advertisements run on Metro buses. Brezonick Dec. at ¶18; Shinbo Dec.at ¶8. It was estimated that, between December 20, 2010 and December 30, 2010, King County received approximately 6,000 emails regarding the SeaMAC Ad. Brezoncik Dec. at ¶6; Kolde Dec., Ex. E at 22:19-23.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 5
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

In addition, numerous calls and emails conveyed the intent to block or vandalize Metro buses, while other communications expressed more violent, if less specific, intentions. Brezonick Dec. at ¶¶12-14, 15-16, Exs. B, C; Brown Dec. at ¶¶5-8("Those signs will not go up"); Declaration of James Bush (Dkt. # 22) at ¶4, Ex A at 4, 5 ("If you run these ads we will … shut metro down", "KC ATTY IS FORCING ME TO VIOLENCE[.]").  Some customers also expressed fear that Metro buses or passengers would become targets for violence or disruption. Brezonick Dec. at ¶14, Ex. A at 3, 5("Is it safe for my son to ride the bus?", "I do not intend to endanger myself by riding on a vehicle that has emblazoned on the side of it hate messages").

On the morning of December 20, 2010, photographs were also found under the door at the Metro Customer Service Center.  Brown Dec.¶8, Ex. A.  The photographs depicted injured passengers on buses that appeared to have been targets of a terrorist attack.  The names "Taniguchi" and "Desmond" (KCDOT Director and Metro General Manager, respectively), along with the phrase "NO TO BUS ADS FOR MUSLIM TERRORISTS", were handwritten on the photos. *Id*.  Metro officials could not definitively determine whether these messages were a threat of harm to the system or an expression of outrage over the SeaMAC Ad, but they found them to be of concern and an indication of the depth of feelings about the Ad.  Kolde Dec., Ex. F at 66:15-19, 68:23-69:5, 75:19-76:3, Ex. D at 22:15-24, Ex. G at 59:12-19.

Metro transit operators also reported concerns about the SeaMAC Ad.  Paul Bachtel, president of the transit union, informed King County that numerous operators expressed fears about their personal safety and some stated that they would not drive buses that displayed the SeaMAC Ad.  Declaration of Paul Bachtel (Dkt. #19) at ¶¶5-8, Ex.A; Kolde Dec., Ex. H at 11:25-12:20, 34:1-23.  In addition, Metro had well-founded safety concerns about bus-pedestrian collisions if persons attempted to deface the ads or prevent buses from operating, given that

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 6
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

injuries from such collisions had occurred in the past.  Declaration of Michael Lemeshko (Dkt. 27) at ¶¶5-12.

As a result of these developments, Metro Transit Police (MTP) and the Operations Section of Metro (Metro Operations) worked on contingency plans to address safety concerns and possible service disruptions due to operator unavailability, acts of civil disobedience, or violence. Declaration of Lisa Mulligan (Dkt. #28) at ¶¶13-20; Declaration of Jim O'Rourke (Dkt. #29) at ¶¶8-12, Kolde Dec., Ex. I at 47:3-14; 49:14-50:21; 51:12-52:4; 53:2-54:6, 57:9-58:25,59:5-60:15, 61:12-62:14.  This planning was time-consuming and resulted in the diversion of resources that affected Metro's ability to monitor other on-going security issues.  Declaration of Jill Krecklow (Dkt. #26) at ¶¶ 5-9; O'Rourke Dec. at ¶¶9, 13;  Mulligan Dec. at ¶¶10-12, 19; Kolde Dec., Ex. G at 117:5-10, 118:11-14, 140:19-141:17, Ex. I at 47:3-14, 68:12-70:10.

On December 21, 2010, Titan informed the County that two other groups, the Horowitz Freedom Center (HFC) and the American Freedom Defense Initiative/Stop Islamization of America (AFDI), submitted proposed ads (Counter-Ads) in response to the SeaMAC Ad. Shinbo Dec. at ¶21.  The text of the ad proposed by HFC was "PALESTINIAN WAR CRIMES-YOUR TAX DOLLARS AT WORK" with two versions of accompanying graphics: one showing an image of a burning bus, the other showing injured and bleeding passengers in a damaged bus. *Id*., Ex E. The text of the ad proposed by AFDI was "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THE SAVAGE, SUPPORT THE CIVILIZED MAN."  This text was accompanied by seven graphic images; including one showing Adolf Hitler with what appeared to be a Palestinian youth wearing traditional head-garb and other images that appeared to be Muslims with Swastika flags. *Id*., Ex. F.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 7
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Law enforcement officials also expressed safety concerns. Kolde Dec., Ex C at 60:3-14, 77:5-9.  Sheriff Sue Rahr opined the display of the SeaMAC Ad and any potential counter-ads would create a security risk for the Metro transit system.  Declaration of Sheriff Sue Rahr (Dkt. #30) at ¶¶6-9; Constantine Dec. at ¶13; Kolde Dec., Ex. K at 23:21-25, 25:22-26:11, 27:7-9, 28:1-3, 29:18-20, 33:1-10, 34:7-11, 40:1-2, 40:14-18, Ex. C at 77:11-20.  She stated that buses are vulnerable targets and incendiary transit messages put passengers at risk by converting them into human billboards. Kolde Dec., Ex C at 77:24-78:-7, 78:22-24, 79:8-14.

Similarly, the United States Attorney for the Western District of Washington, Jenny Durkan, advised Executive Constantine that public transportation systems are "targets of choice" for terrorists and extremists because they are geographically dispersed and difficult to secure; she referenced the Madrid commuter train bombings and the subway and bus bombings in London. Constantine Dec. ¶14; Kolde Dec., at Ex C. at 61:3-15, 68:6-19.  She then advised extreme caution regarding any action "that inches up the dial" and draws the international attention of extremists to the Metro transit system.  *Id.*  By December 22, 2010, the SeaMAC Ad had received international attention.  Stories about the Ad appeared in the Jerusalem Post and other international press.  *Id.* at ¶15.  In addition, information about the SeacMAC Ad was posted on the website of the Ezzedeen Al-Qassam Brigades--the armed branch of Hamas--a known terrorist organization.  Declaration of Michael DeCapua (Dkt. # 24) at ¶¶6-8, Ex A.  While focusing unwanted attention on Metro's transit system was of some concern, King County's decision to cancel the SeaMAC Ad was expressly not based on any information regarding a specific credible terrorist threat against the transit system.  Constantine Dec. at ¶20; Kolde Dec., Ex.C at 62:2-7, 65:4-12.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 8
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Rather, based on the threats that Metro received of vandalism, disruption, and violence and the safety and security concerns expressed by the riding public, transit operators, and law enforcement officials, King County Executive Dow Constantine determined that the SeaMAC Ad and the Counter-Ads violated King County's advertising policy; both sets of ads not only offended the civility standards contained in Sections 6.4 (D) and (E) of the Titan Contract, but service disruptions, civil disobedience, and other lawless and violent actions had become reasonably foreseeable. Constantine Dec. at ¶17.

> Personally my desire was to have the controversy and the competing perspectives aired publicly in a way that did not present a danger to our transit systems, our drivers, or our passengers, and I was searching for that opportunity, and they didn't want to take us up on that ... I decided it that it was reasonably foreseeable that running the ads was going to result in harm to our transit system or to our passengers or to our drivers, or a disruption to our transit service, and ... reluctantly I made the decision that we were not going to be able to run the ads.

Kolde, Dec., Ex. C at 111:10-15, 112:24-113-5.

On December 23, 2010, the Executive directed that neither the SeaMAC Ad nor the Counter-Ads be displayed on Metro buses.  Constantine Dec. ¶ 23.

### III.    EVIDENCE RELIED UPON

The Declaration of Endel Kolde filed In Support of Defendant's Motion for Summary Judgment and the Exhibits attached thereto. The Declaration of Edward Mast, filed In Support of Plaintiff's Motion for Preliminary Injunction (Dkt. #4), and the 14 Declarations filed by King County in opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. #s 19-32).

### IV.    ARGUMENT

Fed. R. Civ. P. 56(c) requires the Court to grant a motion for summary judgment where the pleadings, discovery, and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  "One of the principal

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 9
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

purposes of the summary judgment rule it to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To defeat Defendant's motion for summary judgment, Plaintiff must affirmatively set forth specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256-57 (1986). To meet this burden, Plaintiff must establish the existence of each element essential to the claims on which it will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. A failure of proof concerning any one essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id*. at 322-23. Plaintiff cannot defeat summary judgment by resting upon "mere allegations or denials." Fed. R. Civ. P. 56(e); *Anderson, supra*, 477 U.S. at 256-57.

**A.** **Plaintiff Cannot Establish that Its First Amendment Rights Were Violated**

To prevail on its § 1983 claim, Plaintiff must prove that the County deprived Plaintiff of its First Amendment rights when it refused to display the SeaMAC Ad on Metro buses. Plaintiff, however, cannot sustain its burden of proof on this essential element because SeaMAC cannot show that it had a First Amendment right to express its views in this government forum. The undisputed facts set forth above establish that King County created a limited public forum for advertising on transit facilities and buses. Those facts have not changed since this Court denied Plaintiff's Motion for Preliminary Injunction. Dkt. #40 at 13:19-26. Consequently, the Court's legal conclusions regarding the nature of the advertising space on the exterior of Metro buses should also be reaffirmed. *Id*.

Based on the legal authority discussed below, the Court has already explicitly found that King County created a *limited public forum* when it adopted and enforced advertising restrictions that were intended to "prohibit speech on certain topics and to avoid controversy that would

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 10
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

threaten transit operations or public safety." *Id* at 12.   The Court also properly determined that these restrictions were reasonable -- in light of Metro's mission to provide a safe and reliable public transportation. *Id.* at 12, 14-17.  Finally, the Court concluded that King County's cancellation of the SeaMAC Ad was consistent with Sections 6.4 (D) and (E) of the Contract once safety issues and disruption concerns became reasonably foreseeable. *Id.* at 17.  Thus, the absence of a viable First Amendment claim not only defeats Plaintiff's § 1983 claims, it also necessarily means that Plaintiff cannot show irreparable harm and is not entitled to injunctive relief.  This Court should reaffirm its prior findings and grant defendant's motion for summary judgment.

        **1.**        **King County Created a *Limited* Public Forum for Speech in the Advertising Space on Metro Buses**

It is undisputed that King County's written advertising restrictions limited the content of ads displayed on its buses and that those restrictions had been used to exclude other proposed advertisements based on content. By default, the advertising space on government-owned buses is a non-public forum and the nature of this forum can only be changed through intentional government action.  Plaintiff cannot show that it had unfettered First Amendment rights of access to this space on the County's bus fleet.  *See Cornelius v. NAACP Legal Defense & Ed. Fund. Inc.*, 473 U.S. 788, 800 (1985); *see also*, *Capital Square Review & Advisory Board v. Pinette*, 515 U.S. 753, 761 (1995).

It is well-established that the interior and exterior panels of publicly-owned buses are ***not*** traditional public forums. *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974).  In *Lehman*, the Supreme Court found no constitutional violation, nor the presence of any indicia of a traditional or designated public forum, stating:

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 11
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

*Here, we have no open spaces, no meeting hall, park, street corner, or other public thoroughfare. Instead, the city is engaged in commerce.* It must provide rapid, convenient, pleasant, and inexpensive service to the commuters of Shaker Heights. The car card space, although incidental to the provision of public transportation, is a part of the commercial venture. In much the same way that a newspaper or periodical, or even a radio or television station, need not accept every proffer of advertising from the general public, *a city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles.*

*Lehman*, *supra,* 418 U.S. at 303 (emphasis added).

Thus, the exterior advertising space on Metro buses is a not a traditional public forum and the undisputed facts prove that Metro did not transform this space into a designated public forum. Rather, Metro created a limited public forum by adopting and applying specific advertising restrictions.

Limited public forums are created when a governmental entity intentionally opens government property for only limited use by certain groups or the discussion of certain subjects. *Pleasant Grove City v. Summum*, ___ U.S. ___, 129 S.Ct. 1125, 1132 (2009)*; See also, Hopper v. City of Pasco,* 241 F.3d 1067, 1074 (9th Cir 2001). In such a forum, a lenient reasonableness standard applies and access may be restricted as long as the restrictions are (1) reasonable and (2) viewpoint-neutral. *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44-45 (1983).

A municipal transit system does not create a designated public forum simply by granting selective access to the advertising space on it vehicles. For example, in *Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir 1998), an anti-abortion organization and a civil rights organization sued the city of Phoenix, after the city refused to run the organizations' bus advertisements. The Court held that the city had not created a designated public forum by opening up its exterior panels for advertising to the general public. Instead, the city maintained

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 12
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

control over its non-public forum by consistently applying its blanket restriction on political and religious advertising.  The Court also found that the city policy, which banned noncommercial speech, was viewpoint neutral and reasonable in light of the purpose of the forum, i.e., to raise revenues without offending riders or the community.

Similarly, in *Ridley v. Massachusetts Bay Transportation Authority (MBTA)*, 154 F.3d 972 (9th Cir 1998), the Court held that the regional transportation authority did not create a designated public forum in its advertising spaces.  MBTA's policy allowed a broad spectrum of speech, including speech about religion and public issues.  But the policy also prohibited a narrowly defined class of political speech concerning candidates and ballot measures.  In addition, it prohibited speech that promoted illegal activities to minors and speech that violated civility standards.  The Court held that while MBTA did allow a substantial amount of speech, its limited restrictions showed that the agency had *selectively opened* its non-public advertising space in a manner that did not create a designated public forum.

> We reject the argument that because a government commercial enterprise has opened up discussion on one particular "topic" (say, religion), it must allow any and all discussion on that topic.  *Reasonable ground rules*, so long as they are not intended to give one side an advantage over another, can be set without falling prey to viewpoint discrimination.

*Ridley*, *supra,* 390 F.3d at 91-2 (emphasis supplied)

Thus, it follows from *Ridley,* that allowing some speech on a topic does not mean a government advertising forum must allow all speech on that topic.  As in *Ridley*, King County had reasonable ground rules (Contract Sections 6.4 (D) and (E)) that applied to all of its advertisements, whether political, issue advocacy, commercial, or otherwise.  These restrictions, like the civility limitations in *Ridley*, applied standards to prevent harm or disruption to the

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 13
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

transit system.  Before any ad was placed on the side of a Metro bus, it was reviewed for potential violations of those content-based restrictions.  Shinbo Dec. at ¶¶5, 8.

Metro's advertising restrictions insured that Metro's core responsibilities --to provide the best possible public transportation in a safe, secure, and reliable manner -- were not compromised.  Desmond Dec. at ¶¶3-4.  To run ads that anger the community, scare away riders, and invite disruption is contrary to Metro's mission and bad for business, especially when your business is providing public transportation.

Nevertheless, Plaintiff alleges that King County created a designated public forum for advertising on Metro buses.  Plaintiff's First Amended Complaint (Dkt.#70) at ¶8.  This allegation ignores the clear intent evinced by the restrictions contained in the Titan Contract and is inconsistent with the identified purpose of the transit forum.  In a designated public forum, *all* speakers have the full panoply of First Amendment rights to speak on any subject; even hate speech, race-baiting and demagoguery are afforded constitutional protection. Certainly, King County did not *intend* to provide open access to such speech on the sides of its buses.

Ironically, when speech offended the sensibilities of SeaMAC members, SeaMAC recognized the validity of King County's advertising restrictions.  SeaMAC Spokesman Edward Mast testified that the ads proffered in response to the SeaMAC Ad violated King County's "clear advertising restrictions" and the County properly determined that they should not be displayed on Metro buses.

119
Q. Tell me about the counter-ads that you've seen[.] . . .
A. Two of the counter ads were -- one proposed, I believe, by a local organization that said "Palistinians[sic] War Crimes, Your Tax Dollars At Work," and had a picture of a public bus, a bus burning, which we [SeaMAC] noted would not have met King County's **clear**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 14
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

24 **standards** for advertising under their old policy that
25 ours did meet.   There was another one from an

120

1 organization in New York, I believe, from Pam Geller,
2 saying a slogan very much like "In any battle between
3 civilization and savagery, choose the civilized side,
4 stand by Israel," clearly implying that Arabs are
5 savages and Israel was a civilization.  We all
6 concluded that it would be very unlikely that that
7 would have passed the **very clear standards** that King
8 County Metro had for its advertising.

. . .

21        Q.  Okay.  Why do you believe the counter ads
22 that you've described did not meet King County Metro's
23 advertising restrictions?
24        A.  The one with the picture of a burning bus
25 would be a picture of violence, and King County was

121

1 very clear that they didn't want images of weapons or
2 violence.  The one that typified Arabs as savages was
3 overtly characterizing an ethnic group in a derogatory
4 way, so, again, we felt those **standards were quite
5 clear**.
6        Q.  Do you believe that the comment about drawing a
7 connection between Palestinians and savages was
8 racist?
9        A.  And savages yes, yes.

Kolde Dec., Ex. K at 119:17-121:9. [emphasis supplied].

SeaMAC cannot have it both ways.  Either King County created a *designated public forum* that was available for the expression of all speech, or it created a *limited public forum* through the imposition of content limitations.  But the undisputed facts show not only that SeaMAC recognized that King County's advertising restrictions were "very clear" in limiting the content of bus advertisements, but SeaMAC also conceded that it was aware of those restrictions when it developed its Ad and during its negotiations with Titan.

Robert Mark Eichinger-Wiese, who was designated by SeaMAC as a 30(b)(6) witness, testified that in crafting the text and graphics for its Ad, SeaMAC utilized the criteria outlined in

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 15
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

the County's policy. Kolde Dec., Ex. L at 63:17-23.   SeaMAC Steering Committee member Emily Grosvenor testified that she was the SeaMAC representative who initially worked with Titan to purchase ad space on Metro buses. Kolde Dec., Ex. M at 35:24-36:17.  She testified that Jennifer Quevedo, the Titan salesperson with whom she dealt, explained Metro's ad approval process and sent Ms. Grosvenor Metro's advertising restrictions. *Id.*, Ex. M at 48:14-49:3.

In light of the uncontroverted facts and SeaMAC's concessions, it is undisputed that King County adopted and enforced specific content restrictions for bus advertisements. Therefore, this Court should reaffirm its prior finding that King County created a limited public forum for advertising speech on its buses. The only questions that remain are the reasonableness of those restrictions and their viewpoint neutrality. Again, the facts that are material to these questions are undisputed and this Court's prior findings should be reaffirmed.  Dkt. #40 at 12-17.

**2.       The Advertising Restrictions at Issue in This Case Were Reasonable.**

Speech regulation in a limited public forum must be reasonable in light of the purposes served by the forum. *Pleasant Grove City*, *supra,* ___U.S. ___, 129 S. Ct. at 1132; *see also*, *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995); *Lamb's Chapel v. Center Moriches Union School Dist.,* 508 U.S. 384, 392-93 (1993); *Cornelius, supra*, 473 U.S. at 806; *Perry, supra,* 460 U.S. at 49.  Additionally, the Supreme Court has stated that the "decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation...[A] finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." *Cornelius, supra*, 473 U.S. at 808 (1985); *see also*, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683 (1992).   In other words, restrictions in a limited

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 16
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

public forum are subject to a rational basis test.  Here, King County's civility and disruption of service advertising restrictions were not only reasonable -- they were prudent.

King County Metro runs a bus system, not a roving speakers' corner.  The primary purpose of Metro's Transit advertising program is to raise revenue to support the operation of the public transit system.  Shinbo Dec. at ¶5; Desmond Dec. at ¶8.  But the program is also designed to ensure that advertisements do not have the unintended consequence of undermining Metro's core mission:  to provide secure, safe, comfortable, and convenient service without reducing ridership.  KCC 28.96.210.  Courts have consistently held that it is reasonable for a public transportation system to utilize advertising restrictions in order to serve these purposes.  The *Lehman* court affirmed the reasonableness of a transit advertising restriction that banned all political ads, stating:

> The city consciously has limited access to its transit advertising space in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience.  These are reasonable legislative objectives advanced by the city in a proprietary capacity.

*Lehman*, *supra,* 418 U.S. at 304.

Similarly, in *Children of the Rosary*, *supra*, the Ninth Circuit held that the city's transit advertising ban on noncommercial speech was not only reasonable, but "especially strong", in light of the city's dual interests of "protecting revenue and maintaining neutrality on political and religious issues." 154 F.3d at 979.  In *Ridley*, *supra,* the court determined that MBTA's regulatory scheme -- which included a civility restriction -- was "eminently reasonable". 390 F.3d at 93.

In the context of a different type of limited government forum, the Supreme Court held that a narrow content-based restriction was reasonable.  In *Christian Legal Society Chapter of the University of California, Hastings College of the Law v. Martinez,* __U.S.__, 130 S.Ct. 2971

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 17
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

(2010), the Court found that to be entitled to the benefits of its forum for Registered Student Organizations, it was reasonable for the university to require a student organization to comply with the school's anti-discrimination policy.  Notably, the Court made this finding in circumstances where Hastings had opened the forum to a broad spectrum of speech, with no categorical subject-matter prohibitions. *See also*, *Cogswell v. City of Seattle*, 347 F.3d 809 (9th Cir. 2003).

Like the limitations in the cases discussed above, the civility and disruptions of service restrictions in the Titan Contract were reasonable in light of the purpose of Metro's advertising forum: to raise revenues in support of a safe, comfortable, and reliable public transportation system, without alienating, frightening, or endangering existing and potential customers.

**3.      The Advertising Restrictions at Issue in This Case Were Applied in a Viewpoint Neutral Manner.**

Restrictions in a limited public forum may not favor one speaker over another.  *Perry*, *supra*, 460 U. S. at 46.  Viewpoint discrimination occurs when the government restricts speech-- *that is otherwise within the forum's limitations*--based on the "speaker's motivating ideology, opinion, or perspective".  *Id*.  Here, the SeaMAC Ad was cancelled because it *violated the forum's express limitations*, not because of the viewpoint that it expressed.

The viewpoint-neutrality of King County's decision to cancel the SeaMAC ad is established by the following facts:  (1) the County initially approved the SeaMAC Ad, and only cancelled the Ad when it became clear that disruption and harm were reasonably foreseeable; (2) the County rejected the proffered Counter-Ads on the same basis; and (3) the handful of prior ads about the Middle East that the County allowed did not criticize a specific ethnic or national group and did not present a threat of disruption or harm to the transit system.  Shinbo Dec. at ¶¶15, 20, 26; Constantine Dec. at ¶¶5, 9, 23.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 18
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

The SeaMAC Ad was initially flagged as controversial, but was not perceived as posing a disruption risk. Shinbo Dec. at ¶15; Desmond Dec. at ¶11; Constantine Dec. at ¶5. Information learned later, however, caused a re-assessment. Constantine at ¶5. After the local television broadcast about the SeaMAC Ad, King County received an unprecedented number of complaints. Brown Dec at ¶¶4-9, Ex. A; Brezonick Dec. at ¶¶6-18, Exs. A-D; Bush Dec. at ¶4, Ex. A; Constantine Dec. at ¶¶6-9. While some of the complaints expressed concerns about rider safety or the appropriateness of the Ad, others went so far as to make threats of unspecified violence or more specific threats of vandalism and blocking of buses. Brezonick Dec., Exs. A(safety concerns), B(violence), C(civil disobedience), and D (inappropriateness); Bush Dec., Ex. A (violence, civil disobedience, safety concerns); *see also* Brown Dec. at ¶¶5-8 (phone call and photos slipped under door); Brezonick Dec. at ¶12 (phone call).

Moreover, the submission of Counter-Ads by other groups also served to heighten the potential for disruption. Shinbo Dec. at ¶¶23-25; Constantine Dec. at ¶¶10, 17-18. There was a concern that if the SeaMAC Ad were allowed to proceed, then counter-ads might also have to be displayed on Metro buses. Constantine Dec. at ¶20. Thus, while the SeaMAC Ad had not changed, the context had changed dramatically in a few days. Constantine Dec. at ¶17; Desmond Dec. at ¶15.

By December 23, 2010, it had become reasonably foreseeable that SeaMAC's proffered Ad, which directed insulting, degrading, and offensive material at a specific group, would result in civil disobedience, vandalism, or other lawless actions. Constantine Dec. at ¶17; *see also* Desmond Dec. at ¶¶16, 21. Similarly, it became evident that SeaMAC's Ad was so objectionable under contemporary community standards that imminent harm, disruption or interference with the transportation system was reasonably foreseeable. Constantine Dec. at ¶17.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 19
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

In addition, simply because King County had rejected only one prior ad based on the civility restriction in Section 6.4 (D) does not establish that the Contract restrictions were applied in a discriminatory manner in this case.  Rather, the evidence merely shows that prior ads did not implicate the restrictions at issue here.  In contrast to the circumstances that led to the cancellation of the SeaMAC Ad, the prior ads concerning issues in the Middle-East did not single out a particular ethnic, national, or religious group for negative treatment.  Moreover, they generated only a few complaints and no known threats of disruption.  Shinbo Dec. at ¶¶20-21 ("eight complaints"), Ex. E.  Even the most controversial ad ever to run on Metro buses -- an ad promoting atheism -- was not expressly directed at any particular group and drew complaints that were different in number and content from those received here.  Shinbo Dec. at ¶21, Ex.F.

It is undisputed that Executive Constantine sought to avoid offending persons on both sides of the Mid-East debate, and attempted to move the debate away from Metro buses and into the public square, where it belonged.  Constantine Dec. at ¶¶10, 11, 21; Kolde Dec., Ex. C at 110:20-25, Ex. D at 74:18-75:3.  The County offered to investigate the availability of alternative County forums where SeaMAC could express its views. For example, County representatives suggested that SeaMAC participate in a broadcast on King County TV in which a SeaMAC spokesperson could fully present the position that it was attempting to communicate in its Ad. Kolde Dec., Ex. C at 111:4-112:5, Ex. K at 129:2-10, Ex L at 77:10-21.  SeaMAC rejected the proffered alternatives, maintaining that "we should not be expected to accept an alternative to King County buses for publishing our ad."  Decl. of Edward Mast (Dkt. # 4) at ¶13; Kolde Dec., Ex. K at 129:11-20, Ex. L at 77:21-78:13.

Given the foregoing, Plaintiff cannot show that King County's application of the advertising restrictions in this case constituted viewpoint discrimination.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 20
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

**B.**     <u>**Plaintiff Cannot Establish Its Entitlement to Declaratory or Injunctive Relief**</u>

Plaintiff's allegation of irreparable harm is based on the erroneous claim that King County violated its First Amendment rights.  As established above, King County constitutionally limited access to certain speech in the limited public forum that it created for advertising.  King County does not dispute that SeaMAC's Ad is entitled to First Amendment protection in the proper forum, but Plaintiff has no First Amendment right to display its message in the County's limited advertising forum.  Consequently, Plaintiff's request for declaratory and injunctive relief should be dismissed with prejudice.

**C.**     <u>**Plaintiff's Cannot Establish Its Entitlement to Compensatory Damages**</u>

A plaintiff who establishes liability for the deprivation of constitutional rights under § 1983 is only entitled to recover compensatory damages for *actual* injuries suffered as a result of that deprivation.  *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir.1988).  However, absent proof of actual injury, no compensatory damages may be awarded.  *Phillips v. Hust*, 477 F.3d 1070, 1080 (9th Cir 2007).   In addition, compensatory damages are not permissible based on the abstract value of the deprivation of a constitutional right. *Carey v. Piphus*, 435 U. S. 247, 264 (1978).

Here, Plaintiff cannot support its bald assertion that it suffered economic loss due to the cancellation of the SeaMAC Ad.  First, Plaintiff conceded that the purchase price of the Ad was refunded in full.  Kolde Dec., Ex. L at 118:20-23.  Plaintiff also conceded that it has not identified the economic value of the cancelled bus ad campaign or a method for calculating that value.  *Id*., Ex. L at 115:19-116:14.  Plaintiff did not offer any proof that the ad campaign was intended or designed as a potential source of revenue.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 21
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Second, Plaintiff is a non-profit corporation whose self-described primary purpose is "to educate the public about the Israeli-Palestinian conflict and its relationship to United States' foreign policy." First Amended Complaint at ¶1. In light of that purpose, Plaintiff's claim of economic loss is speculative at best. In fact, SeaMAC concedes that the use of the phrase "Stop Funding Israeli War Crimes" has been "prevalent in Seattle for several years" and prominently displayed during public demonstrations in traditional public forums. Declaration of Edward Mast (Dkt. #4), at ¶13 and Exs. D, E. This fact demonstrates the existence of alternative forums for SeaMACs message.

Moreover, Plaintiff refused to consider King County's offer to investigate the availability of alternate County forums, such as a television segment about the issue on King County TV. Certainly such a program would have been consistent with SeaMAC's stated purpose and would have given Plaintiff the opportunity to explain its views beyond the mere display of the slogan contained in its bus ad.

Plaintiff cannot prove it suffered any actual damage as a result of the cancellation of the SeaMAC Ad, and its request for compensatory economic damages should therefore be dismissed.

### V.    CONCLUSION

The pleadings, discovery, and affidavits submitted in this case establish that there are no genuine issues regarding the following material facts: (1) the content of King County's written advertising restrictions, (2) the application of those restrictions to prior ads that have been displayed or rejected by King County, and (3) the circumstances that culminated in the cancellation of the SeaMAC Ad. Based on these undisputed facts, King County is entitled to judgment as a matter of law.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 22
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

The undisputed material facts support the following conclusions of law: (1) King County's advertising restrictions created a limited public forum in the advertising space on Metro buses; (2) the restrictions were consistently applied during the screening process of all ads submitted for display; (3) King County's advertising restrictions were reasonably related to the forum's purpose; and (4) the restrictions were applied in a viewpoint neutral manner. As a result, Plaintiff cannot establish that King County violated its First Amendment rights and all of its claims against Defendant should be dismissed with prejudice.

DATED this 21st day of July, 2011 at Seattle, Washington.

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: /s/ *Endel R. Kolde*
CYNTHIA GANNETT, WSBA #17152
ENDEL R. KOLDE, WSBA #25155
JENNIFER RITCHIE, WSBA#24046
Senior Deputy Prosecuting Attorneys
Attorneys for Defendant
Email: Cynthia.Gannett@kingcounty.gov
Email: Endel.Kolde@kingcounty.gov
Email: Jennifer.Ritchie@kingcounty.gov

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 23
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 21, 2011, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which will send notification to the following plaintiff's attorneys:

*Jeffrey C. Grant, WSBA #11046*
*SKELLENGER BENDER, PS*
*Email: jgrant@skellengerbender.com*

*Sarah A. Dunne, WSBA #34869*
*Lindsey S. Soffes, WSBA #41506*
*M. Rose Spidell, WSBA #36038*
*ACLU OF WASHINGTON FOUNDATION*
*Email: dunne@aclu-wa.org*
*Email: lsoffes@aclu-wa.org*
*Email: spidell@aclu-wa.org*

DATED this 21st day of July, 2011 at Seattle, Washington.

By: /s/ *Jenny Chen*
JENNY CHEN
Legal Secretary, Litigation Section
Email: Jenny.Chen@kingcounty.gov

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 24
(2:11-cv-00094-RAJ)

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819