HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATTLE MIDEAST AWARENESS CAMPAIGN,

Plaintiff,

v.

KING COUNTY,

Defendant.

CASE NO. C11-94RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the Defendants' motion for summary judgment (Dkt. # 77). Though both parties requested oral argument, the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS the motion (Dkt. # 77).

## II. BACKGROUND[1]

Defendant King County's Department of Transportation operates a public transportation system of buses ("Metro"), consisting of more than 245 routes and serving approximately 350,000 passengers daily. Metro runs a revenue-based advertising program to generate supplemental financial support, and as a part of that program, Metro sells advertising space on the exterior of its buses. *See* Kolde Decl. (Dkt. # 78), Ex. A at 8:2-7. Titan Outdoor LLC ("Titan") is Metro's advertising contractor, and its current contract became effective in 2005. Shinbo Decl. (Dkt. # 31) ¶¶ 2-3.

The Titan contract specifies subject-matter and content-based advertising restrictions, instructing that:

> [Titan] shall not place in or on a transit vehicle any advertising that contains or involves the following:
>
> . . .
>
> D. Any material that is so objectionable under contemporary community standards as to be reasonably foreseeable that it will result in harm to, disruption of, or interference with the transportation system.
>
> E. Any material directed at a person or group that is so insulting, degrading or offensive as to be reasonably foreseeable that it will incite or produce imminent lawless action in the form of retaliation, vandalism or other breach of public safety, peace and order.

Shinbo Decl., Ex. A (hereinafter "Contract") at Sec. 6.4. King County also regulates commercial activity on Metro property:

> As part of its proprietary function as the provider of public transportation, the county seeks to generate revenue from the commercial use of transit vehicles, the tunnel and other passenger facilities to the extent that such commercial activity is consistent with the security, safety, comfort and convenience of its passengers. Accordingly, all commercial activity is prohibited on transit property except as may be permitted by the county in a written permit, concession contract, license agreement, advertising agreement or other written agreement.

---

[1] For the sake of clarity, the court will include a full statement of facts in this order, though this section reiterates (with minor modifications and citations to new evidence) the factual statement included in a previous order (Dkt. # 40).

King County Code ("KCC") § 28.96.210.

Plaintiff Seattle Mideast Awareness Campaign ("SeaMAC") is a Washington non-profit corporation whose primary purpose is to educate the public about the Israeli-Palestinian conflict and its relationship to United States' foreign policy. *See* Complaint ¶ 1. SeaMAC contacted Titan in October 2010 to propose an advertisement that would run on Metro bus exteriors in December 2010 and January 2011, commemorating the two-year anniversary of the Israeli military campaign in Gaza. *See* Complaint ¶ 8. The proposed ad read "Israeli War Crimes: Your Tax Dollars at Work," and featured a picture of children next to a bomb-damaged building. *See* Shinbo Decl., Ex. C.

When Titan initially informed Metro of SeaMAC's proposed advertisement, Metro determined that the advertisement complied with its policy. Constantine Decl. (Dkt. # 23), ¶ 5. Thus, the advertisement was approved and scheduled to run on twelve buses for four weeks, starting on December 27, 2010. *See* Mast Decl. (Dkt. # 4) ¶ 9. But on December 17, 2010, the local news media reported that this advertisement was scheduled to run. *See* Shinbo Decl. ¶ 17. In the days following the news coverage, King County received numerous telephone calls and e-mails from members of the public, the vast majority of which was negative. Desmond Decl. ¶¶ 12-13; Constantine Decl. ¶ 8. Of the communications that were previously produced by King County in opposition to Plaintiff's motion for preliminary injunction, four[2] suggest an intention to disrupt or

---

[2] The messages in this category are: "If you want to see how tough Jews can be, then go ahead and run those despicable ads and we'll see who has the last word on this. If you run these ads, we will work together with our Jewish friends and others to shut Metro down," Bush Decl. (Dkt. # 22), Ex. A at 4; "I am a law-abiding citizen that would have no qualms defacing the message if given the opportunity. I will also be glad to form a peaceful, human blockade of buses that I help pay for that are promoting racist messages," Bush Decl. (Dkt. # 22), Ex. A at 7; "I think I will organize a group to 'riot' at your bus stops," Brezonick Decl. (Dkt. # 20), Ex. C at 22; "I will personally throw paint at any such sign, and stand and wait for prosecution – I want a forum in court!" Brezonick Decl., Ex. C at 23.

vandalize buses, four[3] communicate violent intentions, approximately twenty express concern for rider safety, and approximately eight strongly disapprove of the advertisement's message. *See* Brezonick Decl. (Dkt. # 20), Exs. A-D; Bush Decl. (Dkt. # 22), Ex. A. In total, Metro received approximately 6,000 e-mails concerning the SeaMAC advertisement and hundreds of phone calls. *See* Kolde Decl. (Dkt. # 78), Ex. E at 22:19-23. On December 20, a security guard found photographs of severely injured people and buses destroyed by explosives, with "No to bus ads for Muslim terrorists" written across the top, shoved under the door at the Metro Customer Service Center. *See* Brown Decl. (Dkt. # 21), Ex. A; Kolde Decl. (Dkt. # 78), Ex. D at 22:15-24, Ex. F at 66:13-19 and 75:19-76:3.

On December 21, Titan informed Metro that two other groups had submitted counter-advertisements in response to the SeaMAC advertisement. *See* Desmond Decl. ¶ 14. One advertisement read "Palestinian War Crimes – Your Tax Dollars at Work," featuring images of either a burning bus or injured passengers in a damaged bus. *See* Shinbo Decl., Ex. E. The other counter-advertisement read "In Any War Between the Civilized Man and the Savage, Support the Civilized Man," with seven accompanying graphics, including images of Adolf Hitler with a Palestinian youth and Muslim people

---

[3] The messages in this category are: "AN ATTY WHO SAYS THE SIGNS ARE PERMITTED UNDER THE FIRST AMENDMENT IS FORCING ME TO CONDUCT VIOLENCE JUST TO PROVE THAT I AM REALLY UPSET AT THESE HORRIBLE WORLD WAR2 KINDS OF HATRED SIGNS," Bush Decl., Ex. A at 5; "Maybe you should take note that you just 'incited' ME to anger all the way from Austin, Texas! You want WAR against the Jewish people??? YOU GOT IT!" Brezonick Decl., Ex. B at 13; "YOU ARE TRULLY (sic) DISGUSTING AND DESPICABLE……..AND JUST REMEMBER 'KARMA' what comes around goes around!!! Oh, and by the way, if you dumb asses at the King County Metro pull more shit!! We will be on you like stink on a monkey!!! CAUSE GUESS WHAT, WE JEWS ARE NOT THE SAME AS THE JEWS OF EUROPE DURING THE SECOND WORLD WAR!! WE GET PISSED OFF, WE TAKE ACTION!!!" Brezonick Decl., Ex. B at 15-16; "SO HELP ME GOD I BETTER NOT SEE ONE OF THOSE ADS ON A BUS. I MIGHT NOT BE ABLE TO CONTROL MYSELF. IM NOT SURE. SEATTLE = NAZI'S," Brezonick Decl., Ex. B at 19.

with Nazi Swastika flags. *See* Shinbo Decl., Ex. F. News of the SeaMAC advertisement and the counter-advertisements continued to be reported in the media, including the Jerusalem Post and other international press. Constantine Decl. ¶ 15. King County also became aware that the story was posted on the website of a known terrorist organization, Ezzedeen Al-Qassam Brigades. *See* DeCapua Decl., Ex. A; Constantine Decl. ¶ 15.

King County Sheriff Sue Rahr contacted King County Executive Dow Constantine on December 22 to recommend that the SeaMAC advertisement should not be run, in the interest of public safety. *See* Rahr Decl. (Dkt. # 30) ¶ 9. That same day, Mr. Constantine also spoke with Jenny Durkan, the United States Attorney for the Western District of Washington, who advised that public transportation systems are often targeted by terrorists and that attracting the attention of terrorists to the Metro bus system "is not a good idea." Constantine Decl. ¶ 14; Kolde Decl. (Dkt. # 78), Ex. C at 68. Also on December 22, Mr. Constantine learned that approximately twenty Metro bus drivers expressed fears about their safety and some stated they refused to drive buses running the SeaMAC ad. *See* Bachtel Decl. ¶¶ 5-8, Ex. A; Constantine Decl. ¶ 12; Desmond Decl. ¶ 19; Kolde Decl. (Dkt. # 78), Ex. C at 112:10-20, Ex. H at 34. In response, Metro developed contingency plans to address safety concerns and prepare for possible service disruptions based on the SeaMAC advertisement. *See, e.g.*, Kolde Decl. (Dkt. # 78), Ex. C at 111:8-112:5; *see also* Grant Decl. (Dkt. # 87), Ex. N at 115:17-117:25 (describing the Seattle Police Department's situational assessment of the risks involved with running the advertisement).

On December 23, 2010, Mr. Constantine decided that because service disruptions, civil disobedience, and lawless and violent actions had become reasonably foreseeable, neither the SeaMAC ad nor the counter-advertisements would be displayed on Metro buses. *See* Kolde Decl. (Dkt. # 78), Ex. C at 112:22-113:5. King County simultaneously modified its advertising policy to limit advertising content to commercial and government speech. *See* Shinbo Decl. ¶ 27. The Plaintiff filed this lawsuit on January

19, 2011, and the court denied Plaintiff's motion for a preliminary injunction on February 17, 2011. King County subsequently moved for summary judgment, and the court now turns to consider that motion.

## III. ANALYSIS

### A. Legal Standards.

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

### B. The Advertising Space on the Exterior of Metro Buses is a Limited Public Forum.

In the court's order denying preliminary injunction, the court found that the advertising space on the exterior of Metro buses is a limited public forum. *See* Order (Dkt. # 40) at 7-14. SeaMAC has not submitted any new evidence showing that there is a factual dispute related to the nature of the forum, such that the court's previous ruling should be reconsidered. Thus, in the absence of disputed facts relevant to the nature of the forum, the determination can be made as a matter of law. *See, e.g.*, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 674 (1992) (determining the nature of the forum as a matter of law where "[t]he relevant facts in this case are not in dispute").

Thus, as a matter of law, for the reasons explained in the court's previous order (Dkt. # 40), the court finds that the forum at issue in this case is a limited public forum because the undisputed evidence of King County's policy and practice indicates that it consistently applied content restrictions on advertising to further its purpose of using its property to provide orderly and safe public transportation.[4] Speech restrictions in this limited public forum must be both viewpoint neutral and reasonable under the circumstances, and the court will turn to consider those issues.

**C. King County's Restriction was Viewpoint-Neutral and Reasonable in This Case.**

**1. King County's Restriction was Viewpoint Neutral.**

Plaintiff contends that King County's decision to cancel the advertisement amounts to viewpoint discrimination because the advertisement was canceled due to its unpopular viewpoint. Viewpoint discrimination occurs when the government "denies access to a speaker solely to suppress the point of view he espouses." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 806 (1985).

Plaintiff's argument runs counter to the evidence in this case, however. King County did not suppress the SeaMAC advertisement on the basis of its viewpoint; it originally accepted the advertisement and scheduled it to run. King County did not reject the advertisement on the basis of its content, but only after a subsequent controversy ensued, spurred on by media reports of the scheduled advertisement. Whether the subsequent controversy provided a reasonable basis for rejecting the advertisement is a separate issue, and the subject of the following section.

---

[4] SeaMAC quotes Ms. Shinbo as describing Metro's advertising policy as "allow[ing] the freedom and opportunity for all organizations and associations either political or non-profit to benefit from using transit as a form of advertising their 'cause.'" Pltf.'s Opp'n (Dkt. # 82) at 17:12-14. The source of this quote is not cited in SeaMAC's brief, and King County denies that Ms. Shinbo ever made this statement. *See* Def.'s Reply (Dkt. # 88) at 3 n.1. None of the evidence in this case is consistent with this quote; there is no evidence in the record showing that King County intended to use its property to promote political or non-profit causes.

**2. King County's Restriction was Reasonable Under the Circumstances.**

The court previously found that, based on the record before it at that time, King County's decision to reject SeaMAC's advertisement under Contract Sec. 6.4(D) and (E) was reasonable. *See* Order (Dkt. # 40) at 14-17. The court previously found that King County's decision was reasonable in light of the threats of violence or disruption from the public, the threatening photographs left anonymously at Metro offices, the safety concerns raised by bus drivers, and the advice of law-enforcement officials. *See* Order (Dkt. # 40) at 16:8-12.

The only new evidence Plaintiff cites on this issue is the declaration of expert Richard Conte. *See* Conte Decl. (Dkt. # 84). According to Mr. Conte, the threats received and concerns raised regarding the SeaMAC advertisement did not make "it reasonably forseeable that there would have been harm to, disruption of, or interference with its Metro bus system," nor was it "reasonably foreseeable that the poster would have incited or produced imminent lawless action, such as retaliation, vandalism, breach of public safety, or other type of harm." *See id*. ¶ 2. Mr. Conte's declaration submitted along with summary judgment materials does not elaborate as to precisely which features of the evidence led him to form these opinions, but a declaration submitted in connection with a previous motion provides more context. *See* Conte Decl. (Dkt. # 76) ¶¶ 7-9. According to Mr. Conte, he found the communications received from members of the public to be less credible because "many of the email communications were part of an effort organized by others," and apparently also attempted to examine the commenters' intent and the level of the "angriness" of the language and whether hyperbole is used. *See* Conte Decl. (Dkt. # 76) ¶¶ 4, 5, 8.

But Mr. Conte's statements address only one category of evidence that King County considered when deciding to cancel the SeaMAC advertisement, and he addresses only whether the communications he reviewed were credible threats. Plaintiff relies upon Mr. Conte's opinions in tandem with its contention that Metro's advertising policy

provided for rejection only if an advertisement "will result" in disruption or "will incite imminent lawless action." *See* Pltf.'s Opp'n (Dkt. # 82) at 20. But Plaintiff's contention misreads the policy, which provides for rejection if it is "reasonably foreseeable" that disruption or imminent lawless action will occur. The policy requires neither crystal-ball certainty nor the occurrence of actual disruption or lawlessness; the policy provides for rejection of material if it is reasonably foreseeable that disruption or lawlessness will occur in the future as a result.

Mr. Conte also does not address the interplay between the communications received and other factors considered by King County. Even if the communications received did not constitute prosecutable crimes themselves, as Mr. Conte posits, the fact that, for example, some bus drivers refused to drive buses displaying the SeaMAC advertisement made it reasonable to conclude that a disruption to service would occur. Mr. Constantine testified in a deposition that the concerns of bus drivers were given particular attention: "The bus driver memo was one document that sat on my desk for that time and I looked at [it] a number of times, because I was really concerned about the disruption that would be caused by bus drivers refusing to come in, because of their concern for their safety." Kolde Decl., Ex. C at 112:11-16. *See also* Grant Decl. (Dkt. # 87), Ex. M at 97:4-19. Bus drivers refusing to drive their assigned routes would make it reasonably foreseeable that Metro service would be disrupted, and this potential disruption would not necessarily depend on the credibility of the threats received from the public.

Mr. Conte's opinions also do not address the advice of local law-enforcement officials, who recommended that King County cancel the advertisement in light of safety concerns. King County Sheriff Sue Rahr told Mr. Constantine that she believed that running the advertisement was "an unreasonable risk," and she recommended that Mr. Constantine contact Jenny Durkan, the United States Attorney for the Western District of Washington. Kolde Decl. (Dkt. # 78), Ex. J at 28:1-29:20. While Ms. Durkan declined

to make a specific recommendation, she did note that transportation systems are always vulnerable to attack, and cautioned Mr. Constantine "against doing anything that would increase the likelihood that our transit system would draw attention from people who were seeking to carry out some kind of attack or make a statement." Kolde Decl., Ex. C at 61:4-15. Mr. Conte's opinions do not discount the reasonableness of Mr. Constantine's heeding the advice and guidance of local law enforcement officials in reaching his final decision.

Furthermore, even if Mr. Conte developed different conclusions about the complaints than King County decisionmakers, that difference does not amount to a factual dispute: it is only a dispute as to the conclusions to be drawn from the undisputed facts. This type of dispute does not preclude ruling on reasonableness as a matter of law. *See, e.g.*, *Ridley v. Massachusetts Bay Transp. Authority*, 390 F.3d 65, 71 (1st Cir. 2004) ("There are no disputed facts in this case, only disputes as to what conclusions are to be drawn from those facts.") Plaintiff does not dispute the number or substance of complaints received, for example, but only disputes whether King County's response to those complaints was reasonable.

But reasonableness is a legal conclusion about a factual circumstance, and because the factual circumstances here are not in dispute, the court may determine the reasonableness as a matter of law. *See*, *e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) (district court granted summary judgment, appellate court reversed and remanded, the U.S. Supreme Court reversed the appellate court and found the speech restrictions at issue reasonable and viewpoint-neutral). For the reasons explained here, and previously explained (see Order (Dkt. # 40) at 14-17), the court concludes that no reasonable fact-finder could find, after reviewing the totality of the evidence considered by King County in reaching its decision, that King County's

restriction was unreasonable.[5] Thus, the court finds that summary judgment for King County is appropriate.[6]

The court recognizes its responsibility to safeguard the freedoms protected by our Constitution, and the court is equally mindful of its obligation to protect free expression of speech, including speech that is disfavored or unpopular. But in light of the totality of circumstances of this case, the court concludes that King County's decision to reject the SeaMAC advertisement was a viewpoint-neutral and reasonable restriction in a limited public forum.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS the Defendant's motion for summary judgment (Dkt. # 77).

DATED this 7th day of October, 2011.

The Honorable Richard A. Jones
United States District Judge

---

[5] Though Plaintiff would like to focus on the availability of alternative courses of action, whether alternatives would have *also* been reasonable is not relevant to the issues presented in this lawsuit. The court's finding that King County's decision was reasonable does not foreclose the reasonableness of other alternatives, and the existence of alternatives does not suggest that the decision at issue was unreasonable. *See Lee*, 505 U.S. at 683 (1992) (holding that a reasonable restriction "need not be the most reasonable or the only reasonable limitation," it must be simply reasonable).

[6] Because the court finds that King County is entitled to summary judgment against Plaintiff's First Amendment claim, the court need not address the parties' dispute over whether injunctive relief or economic damages are appropriate. *See, e.g.*, Def.'s Reply (Dkt. # 88) at 7-12.